Pope *v.* Harrison.

---

HELEN POPE *et al. v.* ED. V. HARRISON *et al.*
AND
HELEN POPE *et al. v.* JOHN F. COUTS *et al.*

1. JURISDICTION. *Presumption in favor of.* In a collateral attack upon the proceedings of a court of general jurisdiction, it is not necessary that the jurisdictional facts should affirmatively appear upon the face of the record; it is sufficient if the record, with its legal intendments and presumptions, shows these facts.

2. LAPSE OF TIME. *Effect of, upon an action.* Long lapse of time, while it may not preclude a right of action for the recovery of lands, greatly strengthens the presumptions arising upon the record, that the proceedings under which the lands were taken are valid.

---

FROM MONTGOMERY.

---

Appeal from the Chancery Court at Clarksville. GEO. E. SEAY, Ch.

L. W. FINLAY, J. W. SCALES and THOMAS B. TURLEY for complainants.

SMITH & LURTON and HOUSE & MERRITT for defendants.

COOKE, J., delivered the opinion of the court.

On January 18, 1818, Bennett Searcy died intestate, leaving Marcia F. McLean, then the wife of one Charles D. McLean, his only heir-at-law. He died seized and possessed of a considerable amount of real estate, consisting of town lots in Clarksville and lands adjacent thereto. On January —, 1818, letters of administration were granted the said Charles D. McLean

and the widow of said Searcy upon his estate. On November 29, 1818, said daughter, Marcia, died, leaving her said husband and two children, Maria D. and Marcia S., surviving her, said children being, then, one of them about nineteen months, and the other only six days old. In January, 1819, said Charles D. McLean, the father of said infant children, was duly appointed their guardian and entered upon the duties of said trust.

At the July term, 1819, of the court of pleas and quarter sessions of Montgomery county, two judgments were rendered against the administrators of said estate, one in favor of James Elder, for the sum of $63.00 and costs of suit, and the other in favor of Jerry Bailey, for $56.37½, a plea of fully administered being found by the jury in favor of said administrators in each of said causes.

At the April term, 1820, of said court, judgments upon *sci. fa.*, based upon these judgments, were rendered against said minors, Maria D. and Marcia S., as heirs-at-law of said Searcy, and execution awarded, to be levied of the lands and tenements of the deceased descended to them.

At the April term, 1820, of said court, two other judgments were rendered against said administrators in favor of Polly B. Hatcher, one for $113.75 and costs, and the other for $105.60 and costs, pleas of fully administered having been found in favor of said administrators by the jury in each of these cases.

Judgments upon *sci. fa.* were likewise rendered against said heirs upon each of these judgments at

the October term, 1820, and execution awarded to be levied of the lands descended, etc.

Executions were issued upon these several judgments on *sci. fa.* Those in favor of said Elder and Bailey were levied upon Lot No. 88, in the town of Clarksville, which was sold under the same, and on March 15, 1821, the sheriff executed a deed therefor to the purchaser, Cave Johnson.

The executions issued upon the judgments in favor of Polly B. Hatcher were levied upon Lots Nos. 101 and 103 in said town, which were in like manner sold, and on January 4, 1823, the sheriff executed a deed to John K. Poston, the purchaser of these lots, all of said lots being lands descended to said minors from their said grandfather, Bennett Searcy. Said purchasers went into possession of said lots respectively under said sheriff's deeds, and they and those claiming under them have held the same ever since, and the respondents in these causes respectively were in possession, claiming and holding under said deeds and *mesne* conveyances to themselves from said purchasers said lots in fee.

These bills were filed January 8 and 27, 1880, by the descendants and heirs-at-law of said Maria D. and Marcia S. McLean, alleging that their said father and guardian, Charles D. McLean, was tenant by curtesy consummate, and as such entitled to a life estate in said land, and that they are entitled to the remainder; and that said Maria D. and Marcia S., under whom they claim as such remaindermen, were not parties to the proceedings by *sci. fa.* under which

Pope *v.* Harrison.

said judicial sales were made, and that they were not served with process; that said Charles D. McLean alone was served; that said proceedings were only effective to pass the title to the life estate of said Charles D. McLean, and void as to them and their remainder interests, and they seek to have said sheriff's deeds declared void so far as they purport to convey the fee simple interest in said lots, or to affect their remainder interest, and to have them removed as a cloud upon their titles respectively, the said Charles D. McLean being still alive and his life estate not having fallen in. It is alleged by the bill that portions of these records and proceedings have been lost or destroyed, and certified copies of such portions as have been preserved, and also of the sheriff's deeds, are filed as exhibits and made parts of these bills, and which are certified, not as transcripts of *perfect records,* but to be transcripts of all that can be found after diligent search, etc.

These bills were dismissed upon demurrer and the complainants have appealed. Numerous causes of demurrer were assigned, but those which raise the questions to be considered are, that the records exhibited with the bills, when taken with the legal presumptions arising therefrom, show that said Maria D. and Marcia S., were properly before the court; that said record can not be averred against, and that no extraneous evidence to show the contrary under the the frame of these bills is admissible, and that complainants are barred by laches, long lapse of time and the statutes of limitations, etc.

Pope *v.* Harrison.

As before stated, the records are shown to be imperfect. The judgments as entered upon the records of the court are all complete, but the files to a greater or less extent have been lost or destroyed. The original judgments against the administrators are in the record, but all the files, including the writs, returns, pleadings, evidence, subpœnas, etc., are gone. The judgments are, in all respects, in proper form; they are not assailed, and are sufficient to authorize the issuance of *sci. fas.* on motion against the heir, etc., to reach and subject the realty descended. In the *sci. fa.* proceedings on the judgments in favor of Elder and Bailey, there is none of the record except the judgments entered upon the record. Neither the writs or returns are preserved.

The judgments are as follows:

"James Elder against Charles D. McLean, guardian of Marcia S. McLean and Maria D. McLean, heirs of Bennett Searcy, deceased : This day came the plaintiff by attorney, and the said defendants by their guardian being solemnly called to come and defend this suit came not, nor do they say anything in bar, or preclusion of the plaintiff's action. Therefore it is considered by the court that the plaintiff recover against the defendants the sum of fifty-three dollars and thirty-two cents, the debt in the writ of *scire facias* specified, and also the sum of three dollars and seventy-nine cents interest thereon, and the further sum of nine dollars and twenty-five cents costs heretofore expended, as also his costs expended in serving and prosecuting the writ *scire facias,* to be levied of the lands and tenements which were of said Bennett Searcy at the time of his death, and which have descended to his heirs-at-law."

"Jerry Bailey against the heirs of Bennett Searcy : This day came the plaintiff by his attorney, and Charles D. LcLean, the guardian of the heirs of Bennett Searcy, deceased, being solemnly called to come into court and plead to the *scire facias,* failed to do so, nor says anything in preclusion of the plaintiff's claim, wherefore it is considered by the court, that the plaintiff recover of the said defendants, the sum of fifty-six dollars and thirty-seven and one-half cents debt, and the further sum of two dollars and fifty-three cents damages for the detention of the debt, and the

costs in this behalf expended, to be levied of the lands and tenements of Maria D. and Marcia S. McLean that descended to them from Bennett Searcy, deceased."

The judgments in the *sci. fa.* proceedings in the cases of Polly B. Hatcher, are as follows:

"Polly B. Hatcher against the heirs of Bennett Searcy, deceased: This day came the parties by their attorneys, and thereupon came a jury of good and lawful men to well, etc., who being duly .elected, tried and sworn the truth to speak upon the issue joined, upon their oath do say, that the said defendants have not paid the debt in the *scire facias* mentioned, as said defendants by their guardian have alleged, and the court having inspected the record in the *scire facias* mentioned, and said parties having, by their counsel, been heard, etc.: It is considered by the court that there is such a record as mentioned in the *scire facias.* It is therefore considered by the court, that Polly B. Hatcher recover of the ·said Maria D: McLean and Marcia S. McLean, the sum of one hundred and eighty dollars and seventy-six cents, the debt, and interest thereon to this time in the *scire facias* mentioned, and also the sum of nine dollars and fifty-two cents and the costs, etc., * * to be levied of the lands and tenements that descended to the said Maria D. and Marcia S. McLean as the heirs-at-law of Bennett Searcy, deceased."

The other judgment on the *sci. fa.* proceedings in favor of said Polly B. Hatcher, is in form substantially as the one copied above. There is one writ of *scire facias* in each of these cases contained in the records, each of which is in due form, containing all the necessary recitals, and among others that the lands of Bennett Searcy,· deceased, descended to said infants, Maria D. and Marcia S. McLean, and commanding the sheriff to make known to Charles D. McLean, the guardian of the said minors, etc., and requiring him to appear, etc., and show cause, if any he can, why the real estate descended, etc., should not be subjected to the satisfaction of said judgments, etc. These writs were each directed to the sheriff of Montgomery county, and were executed in . that

county alone upon said guardian. No writs against the infants themselves in either case are contained in the record, nor is it anywhere stated in the record that there were any issued against them, or that there were not. The bills charge that they were living in Davidson county at the time these proceedings were had.

It is not questioned that lands descended can not be subjected by legal proceedings to the satisfaction of the debts of the ancestor, without making the heir a party and the service of process upon him, and if the heir be a minor and have a regular guardian, there must be process served upon both the guardian and the heir. Nor is it controverted that if *sci. fas.* were not served upon said minors, Maria D. and Marcia S. McLean, as well as their said guardian, said judgments were void as to them. It is not stated or shown affirmatively in any of these records that they were served with process, and that fact, if established at all, is by the legal presumptions arising upon the record as presented. And this question, we think, is properly raised by the demurrer, as the record is made a part of it, and can not, as these bills are framed, be averred against or assailed by extraneous evidence. They are not framed with a view or for the purpose of setting up and showing the contents of lost records, but simply aver that no record showing service of process on said minors ever existed. Hence that question must be tried by the record itself, if the judgments in question are the judgments of a superior court of records or of gen-

eral jurisdiction.    It is contended, however, that the·
court of pleas and quarter sessions of Montgomery
county, by which these judgments· were rendered, is
not such a court, but is an . inferior court of limited
and special jurisdiction.    If this is so, there can be
no question but these judgments are void, as in that
case no presumption can arise in favor of its judg-
ments.

The act of North Carolina by which said court
was created, provides as follows: Section 61, "That
the justices of the county court of pleas and quarter
sessions, or any three of them, shall and may take·
cognizance of, and are hereby declared to have full
power and authority and jurisdiction to hear, try and·
determine all causes whatsoever, at the common law,.
within their respective counties where the debt, dam-
ages or cause of action is above five pounds," etc. .
By a subsequent provision, writs of formedon, ac-
tions to try titles to lands, etc., were excepted, but
no restriction upon its jurisdiction of common law
actions conferred by the above · provision.

Mr. Freeman in his work on Judgments, says:
"The next matter to determine is whether the judg-
ment was rendered by a court of general or of special.
jurisdiction.    There is no well defined test by which
to determine in all cases whether a court belongs to·
one class or the other.    But all courts invested with
a general common law jurisdiction, in law or in.
equity, are, when exercising such jurisdiction, properly
included in the first class, while all such courts as
are erected upon such principles that their judgments

must be disregarded until proceedings conferring jurisdiction are shown, belong to the second class. These courts are frequently designated as courts of record and courts not of record. Courts of record, having authority over the subject-matter, are competent to decide upon their own jurisdiction, and to exercise it to final judgment, without setting forth upon their records the facts and evidences upon which their decision is based; their records are absolute verities, not to be impugned by averment or proof to the contrary. A court may possess powers of limited or subordinate character and yet not be a court of limited or special jurisdiction in the sense that it ought to certify everything precisely": Freem. on Judgments, section 122, citing 1 Saund., 74. See also 1 Cold., 168; 3 Hum., 451; 4 Hayw., 60.

It was required to keep a record of its proceedings and judgments, and was a court of record and general jurisdiction, and as such, its judgments import absolute verity when attacked collaterally. It is next insisted for complainants that the attack made upon said judgments by these bills, is a direct and not a collateral attack. We do not think we need discuss this proposition at any length. A direct attack upon a judgment is by appropriate proceedings between the parties to it seeking, for sufficient cause alleged, to have it annulled, reversed, vacated or declared void. This is not the case here, and no decision of this case could affect the validity of said judgments as between the parties to them. The attack here is upon these judgments as evidence of the title

of the respondents to the lands in controversy, in pro-
ceedings between the heirs of the defendants in said
judgments, and those claiming under the purchasers
at execution sale under them. In the case of *Turner*
v. *Ireland*, 11 ·Hum., 447, execution issued upon a jus-
tice's judgment had been levied upon lands and the
papers returned to the circuit court for an order of
condemnation and sale, and the application was at-
tempted to be resisted upon the alleged grounds that
the justice's judgment had been changed after its ren-
dition. This was held to be a collateral attack, al-
though a contest between the original parties to the
judgment, and evidence of the alleged· allegation was
rejected. We hold, therefore, that the judgments in
question here are judgments of a court of record and
import absolute verity, and that the attack now made
upon them is collateral.

We proceed then to consider the important ques-
tion as to the validity or invalidity of these judg-
ments upon their face, as they appear in these records.
In order to make these judgments valid, the court
rendering them must have had jurisdiction, both of
the subject-matter of the litigation and of the persons
of the defendants, Maria, D. and Marcia S. McLean.
There is no question in regard to the jurisdiction of
the subject-matter, as they were actions of. debt, and
the amounts involved in' each case exceeded fifty dol-
lars, but the serious contest is as to the jurisdiction
of the persons of said defendants. As before stated,
in order to confer this, there must have been per-
sonal service of the *sci. fas.*, not only upon their

guardian, but upon the minor defendants themselves. The bill concedes that service was had upon the guardian, but it is denied that there was any upon the wards. It is well settled, that if sufficient facts are recited in the judgment or decree to give the court jurisdiction, these recitals are conclusive, unless they are contradicted by some other part of the record which shows they can not be true: 6 Hum., 379; 11 Lea, 185; 7 Lea, 585; 1 Cold., 582; 5 Lea, 177. But as will be seen from the judgments which we have copied above, there is no recitals in any of them showing affirmatively any service upon the defendants. Do the legal presumptions arising from what does appear upon the record, sufficiently establish that fact? Mr. Freeman says: "The record, however, may be silent upon the subject of jurisdiction. It may fail to show whether the proceedings taken to bring the defendant within the authority of the court were sufficient or insufficient; or, from aught that appears by the judgment roll, no attempt may have been made to perform some act essential to jurisdiction. 'Nothing shall be intended to be out of the jurisdiction of a superior court but that which *expressly* appears to be so.' Hence, though the existence of any jurisdictional fact may not be affirmed upon the record, it will be presumed, upon a collateral attack, that the court, if of general jurisdiction, has acted correctly and with due authority, and its judgments will be as valid as though every fact necessary to jurisdiction affirmatively appeared," citing numerous authorities: Freem. on Judgments, section 124. Again

the same author says: "But it is a matter of no consequence, whether the jurisdiction of the court affirmatively appears upon the judgment roll or not, for if it does not, it will be conclusively presumed," and citing with approbation a recent decision of the Supreme Court of Maine (56 Maine Rep., 81), where it was said, "We concur fully in the doctrine of the numerous cases cited for the plaintiff, where it is held that a domestic judgment of a court of record of general jurisdiction, proceeding according to the course of the common law, can not be impeached by parties to it, where a want of jurisdiction is not apparent upon the record, while it remains neither annulled or reversed." Freem. on Judgments, section 132.

Of such a court, it was said by the Supreme Court of the United States, Mr. Justice Field delivering the opinion, "It is presumed to have jurisdiction to give the judgment it renders until the contrary appears. And the presumption embraces jurisdiction, not only of the cause or subject-matter of the action in which the judgment is given, but of the parties also. The former will generally appear by the character of the judgment, and will be determined by the law creating the court, or prescribing its general powers. The latter should regularly appear by evidence in the record of services of process upon the defendant or his appearance in the action. But when the former exists the latter will be presumed. This is familiar law, and is asserted by all the adjudged cases": *Galpin* v. *Page*, 18 Wall., 365, 366. In the case of *Hopper* v. *Fisher*, 2 Head, 255, 257,

Judge Wright said: "In the bills and proceedings in both of these causes, certain of the heirs, who then appear to have been infants, were made defendants, and in the transcripts of the files used on the trial of this cause no subpœnas were found, nor does it appear whether any ever issued or existed; or whether said infant defendants were ever served with process, or had notice by publication or otherwise, as required by law. As to this, the records are silent. * * When we see, therefore, that the court of chancery at McMinnville, had jurisdiction over the subject-matter of the decrees, and undertook to and did declare the rights of the parties, the infant defendants being represented by guardian *ad litem*, we should not, in a mere collateral attempt to impeach them, especially after such a lapse of time, presume that the defendants were duly served with process, or, in some other way, had the proper notice, so as to give the court jurisdiction of their persons."

In the case of *Fogg* v. *Gibbs*, 8 Bax., 464, Judge McFarland said: "But it is said, even in a case of this sort, when the judgment is brought collaterally into review, the court being one of superior and general jurisdiction, it will be presumed to have taken the necessary steps to acquire jurisdiction over the parties, if nothing else appear. See Smith's Leading Cases, vol. 1, page 12, 7 Am. Ed., page 1126, and authorities cited. And Mr. Greenleaf lays it down, that the presumption will be made, after twenty years, in favor of every judicial tribunal acting within its jurisdiction, that all persons concerned had due notice

of its proceedings: 1 Greenl. Ev., section 19," and that case was decided upon these authorities. Also, *Taylor* v. *Walker*, 1 Heis., 738.

In the case of *Walker* v. *Cottrell*, 6 Bax., 274, there is a statement of the judge delivering the opinion, that "·A record collaterally attacked, should show that the court rendering it had jurisdiction of the person and the subject-matter, otherwise it is. void." And this is insisted on as establishing a rule, or deciding that the jurisdictional facts should affirmatively appear upon the face of the record, or the judgment is void. We do not think, however, such is the proper construction of that decision, but that it was only meant that the record, with its legal entendments or presumption, must show these facts. Thus understood, it is in harmony with our other decisions and the authorities above cited, and the more numerous ones that might be cited upon this subject. Besides, that decision was in regard to an attachment case under our peculiar attachment laws. We hold, therefore, that in the absence of anything apparent upon the record showing they were not so served, the record as presented, with the legal presumptions arising upon them, are sufficient to establish the fact that said minors were served with process, and the judgments are valid.

But it is very earnestly insisted that there are evidences upon these records which do show that the respondents were not so served. It is said that the recitals in the judgment refer to the writ in the singular number as the *scire facias*, from which it

is insisted that but one writ in each case was issued.

It is further said that the record in the Elder and Bailey judgments, entered by default in one instance, show that the "defendants by their guardian, were solemnly called," etc., and in the other, that Charles D. McLean guardian, etc., was called, and this it is contended, indicates there had been no service on said minor defendants. In one or two of the cases, the bills of costs, as transcribed from the execution docket, show but one fee or the fee of the clerk for issuing but one writ, and a fee to the sheriff for but one service to have been taxed by the clerk in the bill of costs.

The writ or writs in the Elder and Bailey cases, as stated above, are missing. But in both the Polly B. Hatcher cases, one writ of *sci. fa.* in each case is preserved, and which were issued to the sheriff of Montgomery county, and commanded him to make the same known to the guardian, Charles D. McLean, the wards not being embraced in either, and the sheriff's return showing service alone upon said guardian in Montgomery county, and from this, it is contended that the inference follows that no other writs were ever issued.

In the case of *Galpin* v. *Page*, above cited, it was said that "if it appears from the return of the officer, or the proof of service contained in the record, that the summons was served at a particular place, and there is no averment of any other service, it will not be presumed that service was also made at

another and different place; or if it appear in like manner that the service was made upon a person other than the defendant, it will not be presumed, in the silence of the record, that it was made upon the defendant also": 18 Wall., 366. But in these two cases in which the service upon the guardian is shown, he, as well as the defendants, was a party to the proceedings, and service of *sci. fa.* on all three of them was necessary. The guardian at the time was in Montgomery county, as shown by the service on him there, and the defendants, Maria D. and Marcia S., were citizens of Davidson county, as shown by the bills themselves. The same writ, therefore, could not have been served upon them all. The service that is shown was on a proper party, and the only one that was then in Montgomery county, and this does not preclude the presumption that a like writ was issued to be made known to said minor defendants in Davidson county, the place of their residence, or of its service there. The designation of the writ in the singular number may have been proper as considered as but one process, or it may have been a grammatical error of the clerk. It was the guardian's duty to defend the suits for his wards, and the calling him to come and do so, if not strictly proper, has very little significance. The costs taxed by the clerk are no part of the record, and can not be looked to as evidence: Freem. on Judgments, secs. 75, 79.

In a word, all these matters urged against it may have existed, consistent with the service of pro-

cess upon said minors, and do not furnish evidence upon the record that they were not served, and do not, in the language of the books, make it *manifestly* to appear upon the record that the court acted without jurisdiction: Wells on Res Adjudicata and Stare Decisis, 401; Freem. on Judgments, *supra.*

More than sixty years had elapsed from the date of these judgments to the time of filing these bills. The administrator of the estate of said Bennett Searcy and guardian of the respondents in said causes was their father, and equally interested in said lands with said minors, being tenant by the curtesy, and thus having a life estate in them; he has acquiesced in the judgments and sale for more than sixty years. There is no pretense or probability that the debts for which the lands were sold were not just debts of said decedent, for which his lands were subjected. And while there is no statute that bars the complainants in these bills from bringing them at any time pending the life estate, yet they might have brought them at any time after the execution of said sheriff's deeds. This long lapse of time, while it does not preclude their right of action, does, by all the authorities, greatly strengthen the presumptions arising upon the records, that the proceedings under which the lands were taken were valid.

The Referees have so reported, and that the chancellor's decrees dismissing these bills should be affirmed. The exceptions to the report will be disallowed, the report confirmed, and the decrees affirmed with costs.