MARIA NICKRANS *et al.*

*v.*

SOPHIA WILK.

*Filed at Ottawa March 28, 1896.*

1. ADVERSE POSSESSION—*under decree of partition is an ouster—when prescription begins.* Possession of and claim of title to the whole tract taken by one of the parties in partition under a decree setting off portions in severalty to the parties is an act of ouster, which will operate as the beginning of a prescription except as against persons under disability.

2. SAME—*suit to annul partition—effect on adverse possession thereunder.* A bill filed by a person in possession of premises to annul a prior decree of partition and to obtain a new partition is sufficient, so long as it is pending, to defeat his claim to adverse possession of the whole tract as against other tenants in common.

3. EVIDENCE—*degree required to sustain ouster by a co-tenant.* Evidence to sustain an ouster by a co-tenant must be stronger than the evidence to sustain ordinary adverse possession.

4. SAME—*presumption of service where record is destroyed.* A presumption of service upon the defendants in a partition suit in which a decree was rendered before the fire of 1871, which destroyed the records of the court, arises when the extracts and minutes taken by the abstracters before the destruction, and made evidence by the amendatory act of June 15, 1887, (Laws of 1887, p. 258,) are merely silent as to such service, without anything to show want of service.

5. SAME—*service of summons presumed after lapse of twenty years.* Service on defendants will be presumed after the expiration of twenty years from a decree of a tribunal acting within its jurisdiction.

APPEAL from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

This was a bill filed on May 14, 1892, by the appellee to establish her title to certain land in Cook county under the "Burnt Records act." She claimed to be the owner of all the premises in question by virtue of an alleged adverse possession thereof for more than twenty years. Appellants were made defendants and answered, denying her ownership of all the lands, and claiming, that she was a tenant in common with them, and took possession and held the same as such tenant in common. The answers denied, that there had been any partition of the premises as alleged in the bill. Appellants also filed a cross-bill on June 1, 1893, asking for a partition of the premises, to which appellee filed an answer. Others of the defendants filed answers and cross-bills. The cause was referred to a master in chancery to take proofs and report his findings, and the master made a report, to which exceptions were filed. The circuit court rendered a decree in accordance with the prayer of the original bill or petition, finding the title to the whole of the land to be in appellee, and dismissing the cross-bills for want of equity. The present appeal is prosecuted from the decree so rendered.

The facts, necessary to understand the questions involved, are substantially as follows: On October 5, 1864, Gottfried or Fred Dose purchased the premises, and he

and his wife, Sophia Dose, now Sophia Wilk, the appellee herein, went into possession thereof, and lived upon the same until 1868, when he died intestate without children, and left, as his heirs-at-law, his wife Sophia Dose, now Sophia Wilk, the wife of John Wilk, and three brothers and one sister, to-wit: Christian, Christoph, Godfrey or Fritz, and Sophia Dose. The latter married one Lindeman. Appellants, Maria Nickrans and Sophia Vierman, are the daughters of Sophia Lindeman, and appellant, Sophia Meyer, is the daughter of Godfrey or Fritz Dose. The widow was living upon the premises when she married John Wilk, and she and her second husband continued to occupy them until 1889, when she leased them to a tenant. She has been in possession from 1868 up to the time of filing the present bill, either in person or by her tenants, and has paid the taxes during that time.

On October 20, 1870, Sophia and John Wilk filed in the Superior Court of Cook county a petition for partition, making Christian Dose, Fritz Dose, Christoph Dose and Sophia Dose defendants. On January 3, 1871, a default was entered in said cause, and on February 21, 1871, a decree was entered appointing commissioners. On May 16, 1871, the report of the commissioners was confirmed and a decree entered, Sophia Wilk to pay half and each of the defendants one-fourth of the costs. The original bill or petition alleges, that the north half of the premises was set off to appellee, and a lien for $700.00 for her dower was established on the south half, and that this sum was never paid to her, and that on May 16, 1871, she took possession of the entire premises and has ever since held them. The records of Cook county, including all record of said partition suit and of the bill filed in September, 1871, as hereinafter mentioned, are shown to have been destroyed in the great fire of 1871. The evidence of said cause and the proceedings therein consists of extracts from the files and records of the office of the clerk of the Superior Court, taken by abstract makers before

the destruction of the records on October 8, 1871. Such
extracts do not show which part of said premises was set
over to any of the parties in said proceedings, or what
proportion of said premises was so set over. On the 8th
of September, 1871, Sophia and John Wilk filed a bill in
the Superior Court of Cook county, making Christian,
Fritz, Christoph and Sophia Dose defendants, in which
bill Sophia Wilk prayed that the decree of May 16, 1871,
might be reviewed and set aside, canceled and annulled,
and that the original cause proceed *de novo.* On July 7,
1874, said bill was dismissed at complainant's costs and
judgment entered therefor.

ARNOLD TRIPP, for appellants.

WILLIAM H. TATGE, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court:

When appellee's husband, Fred Dose, died in 1868, her
possession at that time and up to the rendition of the
partition decree of May 16, 1871, was not adverse, so far
as the sister and brothers of her deceased husband were
concerned. She owned an undivided one-half of the land
and dower in the other half, and they owned an undivided
half thereof, subject to her dower and homestead rights.
She and they were tenants in common, and her posses-
sion was theirs and is presumed to have been for their
benefit, until some act was done showing a contrary in-
tent. "As a general proposition, the entry of one co-
tenant enures to the benefit of all.   *   *   *   As both
have an equal right to the possession, the law presumes
that, if one only enters and takes the rents and profits,
he does this act as well for his companion as for himself.
But this presumption may be rebutted by the overt acts
of the one so entering; by such acts as show, that he
means to hold exclusively for himself without being

accountable to any one." (Freeman on Co-tenancy and Partition, sec. 166).

As we understand the position of appellee, it is conceded, that her possession was not hostile or adverse prior to May 16, 1871, but it is claimed that the tenancy in common was destroyed by the decree of partition entered on that day, and that, thereafter, her possession of the whole of the premises for more than twenty years, together with her payment of the taxes and appropriation of the rents and profits, gave her title to all of the tract to the exclusion of the other heirs.

In order to constitute a disseizin of a co-tenant by a tenant in common, there must be an ouster, or some act which the law deems equivalent to an ouster; and, where there is a decree of partition, setting off different tracts of land in severalty to the persons therein named, possession taken of the whole thereunder is an act of ouster; an entry under it, claiming the whole of the land, will operate as the beginning of a prescription, except as against persons under disability; and possession under it, if actual, continued, visible, notorious, distinct and hostile, will ripen into a bar against a tenant in common thus disseized. (1 Am. & Eng. Ency. of Law, p. 232; Freeman on Co-tenancy and Partition, sec. 227). If appellee's possession of the whole tract partitioned had been adverse and exclusive during the period of twenty years, without recognition in any way of the rights and interests of the other heirs, her title would be good by prescription.

But after the decree of May 16, 1871, and on September 8, 1871, appellee and her husband, John Wilk, filed a second bill against the sister and brothers of her first husband, Fred Dose, which was in effect a new bill for partition of the same premises involved in the former suit begun on October 20, 1870. The proceeding begun by the filing of this new bill on September 8, 1871, was pending and not finally disposed of until July 7, 1874. Twenty years did not elapse between July 7, 1874, and

the filing of the present petition on May 14, 1892. The records of the proceeding having been destroyed by the great fire of October, 1871, it is impossible to tell what the full scope of the bill filed on September 8, 1871, was, but the minutes of its contents, so far as preserved, show that the appellee therein prayed, that the decree of partition of May 16, 1871, entered in the former suit begun on October 20, 1870, might be "reviewed, set aside, canceled and annulled, and that said original cause proceed *de novo.*" By the proceeding begun in September, 1871, appellee evidently regarded herself as still a tenant in common with the other heirs, and sought to set aside the former decree and have a new partition. The intent not to be bound by the former decree is manifest. So long as the second proceeding was pending, it cannot be said, that the appellee was holding the possession of the whole tract by a possession which was adverse and hostile to the other tenants in common.

The evidence to sustain an ouster by a co-tenant must be stronger than the evidence to sustain ordinary adverse possession. (*Barrett* v. *Coburn,* 3 Metc. (Ky.) 513 ; *Forward* v. *Deetz,* 32 Pa. St. 72 ; *Bailey* v. *Trammell,* 27 Tex. 328). To create an ouster there must be an actual and exclusive possession of the whole premises, claiming the whole. (*Florence* v. *Hopkins,* 46 N. Y. 182; *Culver* v. *Rhodes,* 87 id. 348). By the proceeding of September, 1871, appellee recognized the rights and interests of the defendants thereto as tenants in common with herself in the land, and this recognition was inconsistent with a claim of the whole of it on her part.

Adverse possession, to constitute a bar to a right of entry, must not only be hostile in its inception and character and so continue uninterruptedly for twenty years, but it must be under a continuous assertion of ownership, hostile to all others. (*Shaw* v. *Schoonover,* 130 Ill. 448). There could be no continuous and hostile assertion of ownership of the whole of the land by the appellee dur-

ing the period from September 8, 1871, to July 7, 1874, because she was during that time seeking a partition between herself and the other heirs as owners with her of undivided interests in the land. "The difficulty of determining whether a given state of facts constitutes an ouster of one co-tenant by another may be removed by circumstances or declarations, from which the true intent of the party is clearly manifested." (Freeman on Co-tenancy and Partition, sec. 223). The intent, manifested by appellee by the institution and prosecution of the suit of September, 1871, was other than an intent to oust the other tenants in common of their respective interests; it was rather an intent to set off such interests to them in severalty.

For the reasons thus stated we are of the opinion, that the appellee did not establish title to the whole of the land in question by twenty years' adverse possession, and that the finding below in her favor in this respect in accordance with the prayer of her original petition was erroneous.

We think, however, that the cross-bill of appellants was properly dismissed. The object of the cross-bill was to get a partition of the property, and it proceeded upon the assumption, that there had been no previous partition, in other words, upon the assumption that the decree of May 16, 1871, was void. The ground upon which it is claimed, that the decree of May 16, 1871, was void and did not effect a partition between the parties, is that the minutes of the lost record of the partition suit begun on October 20, 1870, do not show service upon the defendants therein, and that, for this reason, the circuit court is not shown to have had jurisdiction to render that decree. It cannot be held that the decree was void, or that the property had not been partitioned thereby, upon the ground thus alleged.

The abstract, copies, extracts from the records and minutes produced by the abstract makers, and made

evidence under the amendatory·act of June 15, 1887, in regard to the restoration of records, (3 Starr & Curtis, Stat. p. 1043), do not show how the land was divided by the decree of May 16, 1871, whether by setting off the north half to appellee, as alleged in the bill, or otherwise; but they do show, that appellee and her second husband filed a bill on October 20, 1870, for the partition of the premises in controversy which are therein described; that the sister and three brothers of the deceased Fred Dose were made defendants; that, on January 3, 1871, a default was entered; that, on February 21, 1871, there was a decree in partition appointing commissioners; and that, on May 16, 1871, there, was a decree confirming the report of partition by the commissioners, and ordering appellee to pay one-half of the costs and the defendants to pay each one-fourth thereof. Jurisdiction over the subject matter is thus shown affirmatively, and while the extracts and minutes are silent as to service upon the defendants, yet, as there is nothing to show want of service, it will be presumed there was service.

The decree of May 16, 1871, was rendered by the Superior Court of Cook county, which was a court of general jurisdiction; and where such a court is acting within the scope of its authority, it is presumed to have jurisdiction to render the judgment or decree which it pronounces, until the contrary appears. It is a well settled rule, that, in collateral proceedings, nothing is presumed to be outside of the jurisdiction of courts of general jurisdiction, but that which specially appears to be so. (*Huntington* v. *Metzger*, 158 Ill. 272; *Reedy* v. *Camfield*, 159 id. 254.) The rule, that nothing shall be intended to be out of the jurisdiction of a superior court except that which expressly appears to be so, is applicable where there is a collateral attack upon the record of the court, which is silent as to service upon the parties. The presumption of jurisdiction in such case embraces not only jurisdiction of the subject matter, but also of the parties.

"Should the record disclose nothing, jurisdiction over the person as well as the subject matter will always be presumed when the validity of the judgment is questioned collaterally." (12 Am. & Eng. Ency. of Law, p. 271, note 3; *Huntington* v. *Charlotte*, 15 Vt. 46; *Kelseys* v. *Wiley*, 10 Ga. 371; *Pope* v. *Harrison*, 84 Tenn. 82; *Bush* v. *Lindsey*, 24 id. 245).

In addition to these general principles, there is another rule to the effect, that the presumption in favor of the regularity of judicial proceedings becomes conclusive after the lapse of time without objection being made. (22 Am. & Eng. Ency. of Law, p. 161). Accordingly, the presumption will be indulged "after twenty years, in favor of every judicial tribunal acting within its jurisdiction, that all persons concerned had due notice of its proceedings." (1 Greenleaf on Evidence, sec. 19). "It will be presumed after the lapse of twenty years, in favor of the validity of judicial proceedings, that the parties concerned had due notice, although the record does not affirmatively show that fact." (*Wilson* v. *Holt*, 83 Ala. 528). In the case at bar, more than twenty years had elapsed after the rendition of the decree of May 16, 1871, before the filing of the original petition by appellee, and more than twenty-two years before the filing of the cross-bill by appellants.

In view of what has been said, it follows that, when the cross-bill was filed for a partition, the premises had already been partitioned by a valid decree; this being so, there were no undivided interests in existence as between appellee and appellants; such interests had been set apart in severalty, so as to leave nothing to be divided. The cross-bill prayed for relief which had already been granted. Its prayer was, therefore, properly denied.

For the error above indicated, the decree of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.    *Reversed and remanded.*