### ABBY BRUMBACK

*v.*

### NANCY BRUMBACK.

*Opinion filed June 19, 1902—Rehearing denied October 10, 1902.*

1. DOWER—*heir cannot set up Statute of Limitations against dowress.* Where a widow and her son occupy, jointly, the premises in which she is entitled to dower, the fact that they remain in such possession for over twenty years does not bar the widow's right to have dower assigned.

2. SAME—*when dower is not barred by the seven year statute.* If a son remains in joint possession with his mother of the premises in which she is entitled to dower, up to the time of his death, a period of over twenty years, the execution of a quit-claim deed to his wife, and her possession of the premises and payment of taxes for seven years, do not bar the right of the mother to dower, where such possession is merely a continuation of the possession previously held by mother and son, jointly.

3. LACHES—*laches cannot be imputed to one in possession.* If widow remains in joint possession with her son of the premises in which she is entitled to dower, *laches* in asserting her dower right cannot be imputed to her while she continues in possession.

4. LIMITATIONS—*tenant in common cannot set up bar against his co-tenant.* One co-tenant cannot set up the bar of the Statute of Limitations against his co-tenant in the absence of disseizin.

APPEAL from the Circuit Court of Hancock county; the Hon. JOHN G. GLENN, Judge, presiding.

This is a petition or bill, filed on September 4, 1900, by the appellee, Nancy Brumback, against the appellant, Abby Brumback, and Arthur Brumback, and Thomas E. Burner, for the assignment of homestead and dower in,

and for the partition of, about five hundred acres of land in Hancock county, to-wit: The south half of the north-east quarter, and the west half of the south-east quarter, and the south-east quarter of the south-east quarter of section 19; and the north-west quarter of the north-east quarter, and the north half of twenty-five acres in the middle part of the east half of the north-west quarter of section 20; and the north-east quarter of section 30, and the east half of the north-west quarter of section 30, all of said lands being situated in township 4 north, range 5 west. Default was taken against Burner, who was merely a tenant of the appellant. Appellant, Abby Brumback, and her son, Arthur Brumback, filed a joint and several answer, denying that appellee, Nancy Brumback, was entitled to homestead or dower in said premises, or to a partition of the same, and alleging that she was barred of any rights of homestead or dower, or as a tenant in common in said premises, by the Statute of Limitations, and that she was also estopped from asserting the same by *laches.* Testimony was taken in the cause, and, upon a hearing thereof, a decree was entered by the court on June 6, 1901, finding that Arthur Brumback had no interest in said premises; that appellee was the owner of an interest of $\frac{352}{512}$ in said premises, and was entitled to have the same set off in fee to her; and that she was entitled to dower in $\frac{352}{512}$ parts of said land, and ordering that appellee have her dower assigned and set off to her, and that partition be made between her and the appellant, according to their respective rights and titles; and appointing commissioners for that purpose. The present appeal is taken by the appellant, Abby Brumback, from the decree so entered by the circuit court.

The material facts as shown by the pleadings, proofs, and decree, entered in the cause, are substantially as follows:

On February 5, 1835, Jacob Brumback was lawfully married to the appellee, Nancy Brumback, and he and

appellee lived together as man and wife from that time
until the death of Jacob Brumback. On January 6, 1853,
Jacob Brumback died intestate, leaving appellee as his
widow, and leaving, as his only heirs-at-law, seven chil-
dren, to-wit: Thomas B., Henry P., Mary E., Emily E.,
John W., Laura Ann, and Susan F. Brumback. At the
time of his death Jacob Brumback was the owner seized
in fee of the premises here in controversy amounting to
about five hundred acres of land, and of about six hun-
dred acres in addition thereto, making altogether eleven
hundred acres of land. At the time of the death of Jacob
Brumback all of his children above named were minors,
the oldest, Thomas B., being only fourteen years of age.
After his death, and while they were minors, two of the
children, to-wit, John W. and Susan F., died intestate,
leaving their mother and their brothers and sisters their
only heirs-at-law. At the time of Jacob Brumback's
death he and appellee, with their children, resided in a
dwelling house, located on the east side of the east half
of the north-west quarter of said section 30, which house
had been constructed in 1848, and was their homestead
from that time up to the time of his death in 1853. After
his death, appellee, as his widow, continued to reside in
said dwelling house and upon said premises with her chil-
dren. Upon the eleven hundred acres of land there were
situated three houses, two besides the dwelling house
above named. The oldest child, Thomas B., married Abby
Southwick, the present appellant, in 1862, and took pos-
session of one of the houses upon the eleven hundred
acres, south of the home place above mentioned. Mary
E. Brumback married a man named Boliver R. Cannon,
and took up her abode in the other of the three houses.
Subsequently, Henry P. married, and took up his abode
with his mother and two sisters, Emily E. and Laura A.,
on the home place. Shortly afterwards, Thomas B. and
Henry P. exchanged places, and Thomas B. and his wife
went to live with the appellee at the home place, and he

and his wife, Abby Brumback, the present appellant, and his mother, Nancy Brumback, the present appellee, and his sisters, Emily and Laura, were living at the home place in 1865.

On August 23, 1865, a division or partition of the eleven hundred acres of ground was made between the children. On that day Henry P. Brumback, and his sister, Mary E. Cannon, conveyed all of their interest in the five hundred acres above described to Thomas B. Brumback and his sister, Emily E. Brumback; and Thomas B. and his sister, Emily E., conveyed other parts of the eleven hundred acres to the other children. On January 5, 1877, Emily E. Brumback, who had married a man by the name of Lewis,-under the name of Emily E. Lewis, conveyed all of her interest in the above described five hundred acres to Thomas B. Brumback. On March 1, 1880, Laura Ann Brumback conveyed all her interest in said five hundred acres to Thomas B. Brumback. Thus, by the deaths of his father, Jacob Brumback, and of his sister, Susan F., and his brother, John W., and by the deeds above executed, Thomas B. Brumback became seized in fee of $\frac{182}{192}$ of said five hundred acres, subject to the dower therein of his mother, Nancy Brumback. The appellee, Nancy Brumback, inherited from her deceased children, John W. and Susan F., $\frac{10}{192}$ of said land. For twelve years after August 23, 1865, Thomas B. Brumback and his wife, and his sisters, Emily and Laura, and his mother, the appellee, all lived on this five hundred acres in the dwelling house, where appellee had resided ever since 1848. After the marriage of Emily, Thomas B. and his wife, and his sister, Laura, and his mother, appellee, continued to live thereon until March, 1880, when Laura, having conveyed her interest therein to Thomas B. as above stated, married and left home. Thomas B. and his wife, however, continued to live with appellee in the dwelling house, and occupied the premises with her, until the death of Thomas B. Brumback in 1894, with the exception of a

short period in the early part of 1893 when Thomas B. Brumback went to Chicago to be treated by his son Arthur, who was a physician living in Chicago, the said Thomas B. being at that time in poor health. During this absence of Thomas B. and his wife, one Gault, a tenant, lived in the house with appellee. During his last sickness, and on March 3, 1893, Thomas B. Brumback executed a quit-claim deed, conveying his interest in this tract of five hundred acres, or thereabouts, to his wife, the appellant, Abby Brumback, at the suggestion of his son, Arthur Brumback, and for the purpose of saving expense and trouble in settling up his estate, the design being that the deed should take the place of a will. After the death of Thomas B. Brumback in April, 1894, the appellant, Abby Brumback, and the appellee, Nancy Brumback, continued as before to occupy this dwelling until the fall of 1899, when, on account of ill-health, appellant went to Chicago to spend the winter with her son, Arthur, and appellee, leaving all her furniture in the house, went to the house of her daughter, Mary Cannon, to remain while appellant was in Chicago. Within a few weeks thereafter appellee was stricken with paralysis at the advanced age of eighty-six years at the house of her daughter Mary, and was unable to return to the home place.

SCOFIELD & MCMAHAN, for appellant.

APOLLOS W. O'HARRA, for appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

Although the petition asked for the assignment of homestead, yet no estate of homestead was claimed by the appellee upon the hearing in the court below, and, hence, no finding upon that subject was made by the court in its decree. Therefore, the question of homestead is not in the case.

*First*—It is not denied, nor could it be, that, upon the death of Jacob Brumback intestate in January, 1853, the appellee, as his widow, became, and was, entitled to dower in the five hundred acres of land here in controversy. It is claimed, however, by the appellant, that her dower has been barred under the Statute of Limitations. In the first place, it is said that, when the arrangement was made between Thomas B. Brumback and his brothers and sisters on August 23, 1865, he took possession of the five hundred acres of land, and remained in the exclusive and adverse possession thereof from that date down to the date of the deed executed by him to his wife, the appellant, on March 3, 1893, a period of more than twenty years. In the second place, it is said that the appellant, under the deed executed to her by her husband, Thomas B. Brumback, on March 3, 1893, as claim and color of title, had the exclusive and adverse possession of said premises for seven successive years, and paid all the taxes thereon during that time.

The dower of the appellee was not barred by the possession of the premises by her son prior to 1893, under the twenty years' limitation law. This is so, because the possession of Thomas B. Brumback was not adverse as against his mother, Nancy Brumback, the appellee. She was in possession of the premises during all of this time jointly with him and his wife. Her dower and homestead were never assigned to her. The testimony tends to show that, on August 23, 1865, it was understood and agreed that she was to live on the home place, and that her son, Thomas B., was to live there with her, and take care of her. She was to have a home there as long as she lived. The possession was no more his possession than it was her possession. His possession was in no sense adverse to hers. She was in the occupancy of the premises as the widow of her deceased husband, Jacob Brumback, and Thomas B. Brumback was the son and heir of her deceased husband. "The heir cannot set up the Statute of

Limitations against the holder of the dower estate, because his possession is not adverse to the holder of said estate. It is the duty of the heir to assign dower, and, for this reason, his possession is not regarded as adverse to the owner of the dower estate, for, otherwise, he would be allowed to take advantage of his own wrong. It is only as against strangers, or a purchaser either from the deceased owner of the fee, or from his heir or heirs, that the Statute of Limitations can be pleaded as a defense to the enforcement of a dower right. While the heirs of a deceased husband are in possession of his lands, the Statute of Limitations does not run against the widow's claim for dower." (*Sill* v. *Sill*, 185 Ill. 594, and cases referred to on p. 605). So, also, the possession by the widow, under her statutory right, of the dwelling house and land is not adverse to the title of the heirs, but is entirely consistent and in harmony with such title. Under the statute, as it existed when the appellee went into possession, her right of possession was defeasible upon the assignment of her dower. In her case her dower was never assigned, and her possession continued by consent of the heirs, including her son Thomas B. Brumback, for the term of her natural life. (*Reuter* v. *Stuckart*, 181 Ill. 529; *Riggs* v. *Girard*, 133 id. 619; *Gosselin* v. *Smith*, 154 id. 74). It has been held, however, that the widow's dower may be barred as against a stranger or purchaser, who has been in the possession of the premises for seven years, and paid taxes thereon, as required by section 6 of the Limitation act. (*Sill* v. *Sill, supra; Owen* v. *Peacock*, 38 Ill. 33; *Steele* v. *Gellatly*, 41 id. 39; *Whiting* v. *Nicoll*, 46 id. 230; *Brian* v. *Melton*, 125 id. 647; *Miller* v. *Pence*, 132 id. 149; *Hart* v. *Randolph*, 142 id. 521). This doctrine is invoked to establish a bar under the seven years' limitation law in view of the possession by the appellant for seven years under the deed executed to her by her husband in March, 1893. The doctrine, however, has no application here. Appellant was not a stranger or purchaser. The deed,

made to her by her husband in March, 1893, was without consideration, naming only a nominal consideration of one dollar.   She was a mere volunteer, and occupied no different attitude towards the appellee from that which had been occupied by her husband before the deed to her was executed.   For years she had lived with her husband upon the premises in the dwelling house above mentioned with appellee.   After the execution of the deed in March, 1893, she continued to live there with appellee.   After the death of her husband, Thomas B. Brumback, in April, 1894, her possession, if not subordinate to the possession of the appellee, was certainly a joint possession with the appellee, and necessarily, therefore, not adverse in its character.   After the deed was made to her by her husband, the character of her possession did not change, nor did she give to the appellee any notice that she intended thereafter to hold adversely.   (*Smith* v. *Huntoon,* 134 Ill. 24; *Morris* v. *Robey,* 73 id. 462).   We are, therefore, of the opinion that the dower of the appellee was not barred under the seven years' limitation law.

It is said, however, that the appellee is estopped from asserting her dower by *laches.*   It is well settled that the doctrine of *laches* can only be invoked by one in possession against one out of possession.   Appellee was in possession of the premises in question from the death of her husband in 1853 until she filed her petition in this case, a period of some forty-seven years.   This possession was notice to the world of her rights, and *laches* can not be imputed to her.   (*Dorman* v. *Dorman,* 187 Ill. 154; *Parker* v. *Shannon,* 137 id. 376).

*Second*—It is not denied that, as heir of her two deceased children, John W. Brumback and Susan F. Brumback, the appellee became the owner in the premises of an undivided $\frac{32}{512}$ interest therein.   As the owner of this undivided interest, she was tenant in common with her children, the owners of the remaining $\frac{480}{512}$ parts of the premises; and when, by deeds from his brothers and sis-

ters, Thomas B. Brumback became the owner of the latters' undivided interest, she was a tenant in common with him in the ownership of the premises. It is claimed, however, on the part of the appellant, that she is barred from the right to assert her interest, as undivided owner in the premises, by lapse of time, and by alleged acquiescence in the ownership of her son, Thomas B. Brumback, by reason of her failure to assert her rights for so long a period of time. Possession of Thomas B. Brumback before his death and by the appellant since his death, as his grantee, is claimed to be a bar as against her under the limitation laws both of twenty years and of seven years.

Appellee, and her son, Thomas B. Brumback, having been tenants in common, his possession was hers, and is presumed to have been for her benefit, until some act was done showing a contrary intent. Here, the proof shows no such act. One tenant in common cannot set up the statutory bar against his co-tenant. The possession of one tenant in common is, in contemplation of law, the possession of the other or others; "and this is especially true where all the parties derive title from the same deed, or from the same ancestor." (*McMahill* v. *Torrence*, 163 Ill. 277). Such possession by one co-tenant, even when accompanied by payment of taxes upon the premises, however long continued it may be, does not constitute a bar under the statute. Nor is the possession of one co-tenant adverse to the other when it is accompanied by an appropriation of the rents. Something more is required. In *McMahill* v. *Torrence, supra,* we said: "It is not sufficient that he continues to occupy the premises and appropriates to himself the exclusive rents and profits, makes slight repairs and improvements on the lands, and pays the taxes, for all this may be consistent with the continued recognition of the rights of his co-tenants. To constitute a disseizin there must be outward acts of exclusive ownership of an unequivocal character, overt and

notorious, and of such a nature as by their own import to impart information and give notice to the co-tenants, that an adverse possession and an actual disseizin are intended to be asserted against them." (*Nickrans* v. *Wilk*, 161 Ill. 76; *Blackaby* v. *Blackaby*, 185 id. 94).

At the meeting on August 23, 1865, when a division of the lands, belonging to the estate of Jacob Brumback, was made between his children, the appellee and all the children and two lawyers were present. The proof shows that appellee did not sign any of the deeds, so that she neither conveyed away her dower right, nor her undivided interest in the premises. One of the attorneys told her at that time "that, as long as she did not sign away her rights, she would retain them;" and it was there talked over and understood by all the parties that, by not signing the deeds, she was to retain all her rights in the premises, both as dowress and as owner of an undivided interest therein. There was nothing in the conduct of her son, Thomas B. Brumback, while they occupied the premises together, which indicated that he intended to hold the same exclusively for himself and adversely to his mother; nor can it be said that the appellant stood in any different position towards the appellee after the deed was executed to her by her husband in March, 1893. That deed conveyed to her only the interest, which her husband had in the premises. That interest was an undivided $\frac{360}{392}$, and the deed did not convey the $\frac{32}{392}$ owned by the appellee. The possession of the appellant thereafter was not adverse to appellee, because it was simply a continuation of the possession previously held by her husband. After the deed was executed, she was a co-tenant with the appellee, as her husband had been before the execution of the deed. She never gave notice to appellee, that she was claiming under any other or different title from that previously held by her husband. The appellee swears that she never knew that her son had executed a deed to his wife, the appellant, until

after she was stricken with paralysis in the fall of 1899, and that then she was informed of it by the wife of her grandson, Arthur. Arthur testifies that he told the appellee of the deed after it was made, and before the death of his father. The chancellor upon the hearing of the cause below heard the testimony of these parties, and it was for him to decide which was the more worthy of belief. Whether she knew of the deed or not, however, the appellant was not a purchaser of the land from her husband, Thomas B. Brumback, and was grantee of no greater interest than that which her husband owned. In *McMahill* v. *Torrence, supra,* we said: "If a party, who acquires by deed of purchase the interest of a tenant in common, be held to the same rule as his grantor regarding the application of the Statute of Limitations, as we hold he must, then such party cannot acquire any rights against his co-tenant by possession only and payment of taxes, where he has given no actual notice that his possession is adverse.—*Sontag* v. *Bigelow,* 142 Ill. 143." No such actual notice was given here.

It is also claimed by the appellant that the appellee is estopped from asserting her interest as undivided owner by *laches;* but the same principle applies here to appellee's rights as tenant in common, as was held applicable when the doctrine of *laches* was invoked against her right to set up her dower. Inasmuch as appellee was all the while in possession of the property, *laches* could not be imputed to her. Her possession was notice to the world of her rights.

We are of the opinion that the decree of the court below correctly disposed of the rights of the parties. Accordingly, the decree of the circuit court is affirmed.

*Decree affirmed.*