# CHARLESTON

## SMITH *et al* v. OWENS *et al.*

Submitted June 6, 1907.    Decided November 26, 1907.

1. QUIETING TITLE—*Laches.*

   *Laches* will not be imputed to one in possession of land who reverts to a court of equity to settle a question of title, as against an adverse claimant who is out of possession, no matter how long his delay. (p. 65.)

2. VENDOR AND PURCHASER—*Bona Fide Purchaser.*

   It is the duty of one purchasing real estate to examine the records; and, whether he does so or not, he is affected with notice of every fact the knowledge of which might have been obtained from the record, or to which the facts there appearing would have led him. (p. 66.)

3. DEED—*Description.*

   The main object of a description of land, in a deed conveying the same, is not in and of itself to identify the land, which it

rarely does or can do without aiding evidence, but to furnish the means of identification; if it does this, it is sufficient. (p. 66.)

4. VENDOR AND PURCHASER—*Bona Fide Purchaser*—*Notice.*

Possession of land is sufficient notice to a purchaser, contracting with a claimant. thereof not in possession, to put him on inquiry; and if he takes conveyance from such claimant he will be charged in favor of the person so in possession with all information such inquiry would have given him if diligently pursued. (p. 66.)

5. REFORMATION OF INSTRUMENTS—*Deed—Evidence.*

The evidence required by a court of equity to correct a deed on the ground of mistake must be clear, convincing and free from reasonable doubt. (p. 67.)

6. DEEDS—*Description.*

Where the description of land by monuments, distances or otherwise is vague and indefinite, by reason of conflicting lines or omission of a line, or from any other cause, the statement of the acreage is an essential part of the description. (p. 67.)

7. REFORMATION OF INSTRUMENTS.

Where an instrument is drawn and executed which professes or is intended to carry into execution an agreement previously entered into, but which by mistake of the draftsman either as to fact or to law does not accomplish the purpose intended, or violates it, equity will relieve from such mistake. (p. 67.)

Appeal from Circuit Court, Wetzel County.

Bill by Henry L. Smith and others against J. D. Owens and others. Decree for plaintiffs, and defendant Owens appeals.

*Affirmed.*

THAYER M. McINTIRE, for appellant.

DAVE D. JOHNSON, for appellee.

MILLER, PRESIDENT:

Elizabeth A. Starkey, wife of John T. Starkey, owned in 1884 two tracts of land adjoining each other on Stouts Run in Wetzel county—one called in the record the "Lauck 14 acre tract," containing 28 acres, conveyed to her by R. W. Lauck and wife in 1881; the other called the "Peterson 50 acre tract," lying directly north of the first, purchased by her of George Fox in 1879. On February 28, 1884, she and her husband conveyed to Sarah A. Lowe 5 acres of the Lauck tract, being a narrow strip on the western side

thereof. As to the Peterson tract, title to the southeastern part thereof, containing 17 acres, was asserted by one Eliza Monroe; but the interest so claimed was conveyed to said Starkey by said Monroe and husband February 25, 1884; and this parcel is referred to in the pleadings and evidence here as the "Eliza Monroe 10 acres." On June 12, 1884, Elizabeth A. Starkey and husband, in consideration of $55 cash and $195 in deferred installments, conveyed to Elizabeth Shreves a tract of land described as follows: "Beginning at a cucumber, thence S 88 1-2 E 86 poles to a stone; thence S 21 E 26 poles to pointers; thence S 35 E 20 poles to a rock oak; thence S 89 E 16 poles to a stone; thence with the agreed line between Elizabeth Ann Starkey and Sarah Lowe to a stone in the run; thence up the run with the agreed line of John T. Starkey and J. M. Monroe to a white walnut at the foot of Polly Point; thence up the center of the Polly Point, agreed line of J. T. Starkey and J. M. Monroe, to chestnut oak, corner in the land purchased of Fox by Elizabeth A. Starkey; thence with the same to a white oak, corner to E. J. Stout's land; thence with E. J. Stout's line home to the beginning, supposed to contain forty-five acres, be the same more or less." On December 3, 1892, H. L. Smith, by agreement of that date, purchased from said Shreves for $450 the land so conveyed to her; and on December 15, 1892, the Shreves deed never having been recorded or the deferred installments therein mentioned paid, said H. L. Smith and W. A. Smith obtained, in lieu thereof, a deed from Elizabeth A. Starkey and her husband for the same land, the description therein being identical with that in the Shreves deed, and the consideration therein being also the same except as to the time of the deferred installments. It is claimed by both Shreves and the plaintiffs here that these deeds were intended, by the description so given, to embrace and convey not only the "Eliza Monroe 10 acres," but also the "Lauck 14 acre tract," but, by mutual mistake in said description, failed to do so; and it is the sole object of this suit to so correct the description in the deed to the plaintiffs as to make the same conform to this alleged intent of the parties thereto.

The amended bill upon which the final decree is based,

filed at May rules, 1906, referring to and reiterating in substance the allegations of the original bill, alleged, after setting forth the foregoing facts, that an action of ejectment was then pending in the Circuit Court of the United States for the Northern District of West Virginia, wherein the plaintiffs and the South Penn Oil Company were made defendants, instituted by the defendant J. D. Owens, who was therein setting up title to said Lauck tract by virtue of two pretended conveyances therefor—one executed in 1898 by Elizabeth A. Starkey and husband to him, and the other in 1902 by the husband and heirs of said Elizabeth A. Starkey after her death, to replace the former one of 1898, which was claimed to have meanwhile been lost before recordation; that the plaintiffs and their immediate predecessor in title had been for twenty years in actual possession of the land so claimed by them under said deed of December 15, 1892; that they had discovered a discrepancy in the boundaries of the land recited in said deed; that said boundaries were intended by the grantors to embrace not only the "Eliza Monroe 10 acres," but also the land described in the declaration in said ejectment suit except the 5 acres theretofore conveyed to said Lowe, but by mutual mistake such true intention had not been correctly set out in said deed; that the scrivener had attempted, in drawing said deed, to follow the calls of the original Lauck deed to Elizabeth A. Starkey except as to said Lowe Parcel, but had so utterly confused the same as to make them unintelligible, reversing the first and omitting the second thereof; that "by commencing at the cucumber in the S. J. Stout line, and running thence with the last four courses of the Lauck deed, reversing the calls, namely, S 10 W 55 poles to pointers; thence S 85 W 11 poles to a stone; thence S 38 W 16 poles to a stone, thence N 89 W 16 poles to a red oak, and thence with the line between Elizabeth Ann Starkey and Sarah A. Lowe to a stone in the run; thence up the run with the agreed line of Elizabeth A. Starkey and Eliza Monroe to a white walnut at the foot of Polly Point; thence up the center of Polly Point, agreed line between Elizabeth A. Starkey and Eliza Monroe, to a chestnut oak, corner in the land purchased of Fox by Elizabeth A. Starkey, thence with the same to a white oak, corner to S. J. Stout's

land; thence with E. S. Stout's line home to the beginning," all the calls in said description would be rendered plain and simple and conform to the true intention of the parties; that the said Starkeys had never made any claim to either of said two tracts since their deed to said Shreves; that said Owens was not a *bona fide* purchaser, but took his conveyances with full knowledge and notice of the title and possession of the plaintiffs, and of the fact that they had leased said Lauck tract to the South Penn Oil Company, which then had two producing wells · thereon; and the prayer of said bill was that, in order to make said deed a proper defense to said action of ejectment, the description therein be corrected and reformed according to the true intent of the parties, and that the heirs of said Elizabeth A. Starkey be required to execute to the plaintiffs such corrected and reformed deed, or, if they failed to do so, that the same be executed by a commissioner appointed.

The defendants Owens and John T. Starkey, in their answers filed, after admitting the pendency of said action of ejectment and the execution of said deed to the plaintiffs here, denied that it was the intention of Elizabeth A. Starkey and husband to convey the Lauck tract by said deed; that the possession of Elizabeth Shreves and the plaintiffs of said tract was by virtue of their said deeds, or that Elizabeth A. Starkey or her husband had not since the execution of said deeds claimed to own the same; and further denied that, prior to the conveyances procured by him, Owens had notice of the alleged title of the plaintiffs thereto, but averred that he was a *bona fide* purchaser for value.

By final decree of June 19, 1906, from which this appeal is prosecuted, the relief sought was granted, the description in said deed to the plaintiffs corrected in accordance with the statement of the true boundaries set forth in the amended bill as above quoted, and such corrected deed ordered to be executed to them by the husband and heirs of Elizabeth A. Starkey, or, in case of their default therein, then by the special commissioner thereby appointed.

The questions involved in this cause and argued for our

consideration are three—embracing alleged *laches* on the
part of the appellees, purchase without notice and for
value on the part of the appellant Owens, and the alleged
insufficiency of the evidence to support the decree com-
plained of.

First, as precluding the relief sought, the appellant
would interpose the bar of *laches* on the part of the appel-
lees in applying for reformation of their deed. This defense
is not tenable here. The pleadings allege and the proofs
disclose that the appellees had been in actual and continuous
possession of the Lauck tract since their deed of 1892, duly
recorded and its discrepancy in description undetected; that,
unmolested by any one, they had during all that time
exercised absolute ownership over said tract, improving the
same and leasing it for oil, resulting in very valuable
oil developments. There is no proof of negligence on their
part as to the discovery of the mistake, or of delay in the
assertion of their rights after such discovery. Holding a
deed duly recorded, drawn by a scrivener who professed,
but had inadvertently failed, to correctly follow the courses
and distances of prior deeds in the chain of title, they,
with their rights acknowledged and unquestioned, were
without an inducing motive to minutely examine and com-
pare the records to ascertain the discrepancy later brought
to light. The appellant is shown to have been out of pos-
session; in his declaration of ejectment in 1905 he lays the
ouster on the day following the execution of his deed in
1898; the claim of the appellees is shown to have been as
fully known to him in 1898 as in 1905; and the question
naturally arises, why this unexplained delay on his part
meanwhile in the assertion of his alleged rights? Promptly
when attacked by said action of ejectment, the appellees filed
their bill to so correct their deed as to constitute the same an
available defense thereto. Under this state of facts, no *laches*
will be imputed to them. They were at liberty to wait until
their title was attacked before being obliged to act; for it is a
well settled principle that one in possession of land who
resorts to a court of equity to settle a question of title, as
against an adverse claimant who is out of possession, is not
chargeable with *laches*, no matter how long his delay. 5
Pom. Eq., section 33; *Coal Co.* v. *Doran*, 142 U. S. 448;

*Waldron* v. *Coal Co,*, 54 W. Va. 617; *State* v. *Sponaugle*, 45 W. Va. 431; *Hayes* v. *Carroll*, 74 Minn. 134; *Thompson* v. *Dumas*, 85 Fed. 517; *Gunnison Co.* v. *Whitaker*, 91 Fed. 191; *Shaw* v. *Allen*, 184 Ill. 77; *Gordon* v. *Johnson*, 186 Ill. 18; *Brumback* v. *Brumback*, 198 Ill. 66; *Sheldon* v. *Dunbar*, 200 Ill. 490.

Again, the appellant claims that he was a *bona fide* purchaser for value without notice. In our opinion, the evidence unmistakably tends to prove the contrary. He admits in his deposition, contrary to the averments of his answer, that he made no investigation of the title when he took his deed in 1898. This it was his duty to do; and, whether he did so or not, he was affected with notice of every fact the knowledge of which might have been obtained from the record, or to which the facts there appearing would have led him. *Miller* v. *Holland*, 84 Va. 652; *Coles* v. *Withers*, 33 Grat. 186; *Brush* v. *Ware*, 15 Pet. 93; *Burwell* v. *Fauber*, 21 Grat. 446; *Coal Co.* v. *Doran, supra.* True, the boundaries of the Lauck tract given in the deed to the appellees were confused, but they were all there save one; the description called for old and established land-marks, and to run with the agreed line between the five acres of the Lauck tract conveyed to Sarah A. Lowe and the residue therof still owned by Elizabeth A. Starkey; and the appellant could not have closed his eyes to these significant facts appearing upon the face of the deed, sufficient to put a reasonable man on inquiry. The main object of a description of land sold and conveyed, in a contract of sale or in a deed, is not in and of itself to identify the land sold, which it rarely does or can do without aiding evidence, but to furnish the means of identification; if it does this, it is sufficient. *Thorn* v. *Phares*, 35 W. Va. 772. The actual possession by the appellees was also notice to Owens, constituting *prima facie* evidence of title in them. Possession of land is sufficient notice to a purchaser, contracting with a claimant thereof not in possession, to put him on inquiry; and if he takes a conveyance from such claimant he will be charged in favor of the person so in possession with all information such inquiry would have given him if diligently pursued. *Campbell* v. *Fetterman*, 20 W. Va. 398; *Ellison* v. *Thorp*, 44 W. Va. 436; *Weekly* v. *Hardesty*, 48 W. Va. 39. More-

over, in addition to these elements of notice from the record
and the possession of appellees, Owens was otherwise
charged with actual notice. His own witness, John T.
Starkey, practically admits in his testimony that the deed to
Owens was a venture on the part of all ·concerned in its
making, and that the payment of the deferred purchase
money therein mentioned was made contingent upon the
success of Owens in holding the land as against Smith; and
there is other evidence tending to prove actual notice un-
necessary to be referred to.

Lastly, it is argued that the evidence in this cause is not of
that reliable character required by courts of equity
as prerequisite to reformation of deeds on the ground of mis-
take. It is undoubtedly true ·that the evidence in such case
must be clear, convincing and free from reasonable doubt.
*Allen* v. *Yeater*, 17 W. Va. 128; *Jarrell* v. *Jarrell*, 27 W.
Va. 743; *Pennybacker* v. *Laidley*, 33 W. Va. 624; *Fishack*
v. *Ball*, 34 W. Va. 644; *Koens* v. *Kerns*, 47 W. Va. 575.
But we think the proof here overwhelmingly tends to support
the decree. It being apparent that a mistake was made,
but the true intention not being discoverable with certainty
from the deed itself, we must look to the surrounding facts
and circumstances and to the acts of the parties in order to
ascertain what was intended to be conveyed. We will, how-
ever, refer to only a few of the decisive facts shown in evi-
dence. The description as corrected by the final decree is
not greatly variant from that inserted in the deed originally,
and is in almost literal accord with the statement of the true
boundaries alleged in the amended bill. As to the "Eliza
Monroe 10 acres" included, the calls inserted in the deed
are certain and admittedly correct. Both the Shreves deed
and the one to appellees purported to convey 45 acres, the
true acreage of the Monroe and Lauck tracts. Where the
description of tracts of land by monuments, distances or oth-
erwise is vague and indefinite, by reason of conflicting lines
or the omission of a line, or from any other cause, the state-
ment of the acreage is an essential part of the description.
*Hostetter* v. *Railway Co.*, 108 Cal. 38; *Kirkland* v. *Way*,
45 Am. Dec. 752, 2 Devlin on Deeds, section 1045; *Barbour*
v. *Tomkins*, 58 W. Va. 590. The county clerk testified, and
the records of his office as exhibited by him also showed, that

up to 1894 Elizabeth A. Starkey was charged on the land books with the Eliza Monroe and the Lauck tracts, the deed of Shreves in 1884 not having been recorded (although Mrs. Shreves testified that she paid the taxes on both tracts while in possession under her deed); that, having in 1894 conveyed to L. L. Smith the residue of the Peterson 50 acre tract, said Starkey was not assessed thereafter with any land whatever in Wetzel county; and that from 1894 up to the institution of this suit 45 acres were assessed to H. L. Smith, with the marginal note in the former year, "From E. A. Starkey." Further indicative of the true intent of the parties in the deed to the appellees, John T. Starkey testified as follows respecting the negotiations with Owens for the purchase of the Lauck tract from his wife: "She claimed that she had a right she thought to sell it and to get her money out of it, that Smith had agreed to pay her. Q. You mean to sell the land that she had already sold to Smith? A. He would not pay it, and never has paid it. Q. Then her intention was to convey to Owens the land that she had already conveyed to H. L. and W. A. Smith? A. It might have been; I don't know. Q. Didn't you just say that she told you that Smith had not paid for the land? A. She said she had a right to get her money out of it. Q. And in doing so she attempted to include in the deed made to Owens the land that she had already conveyed and deeded to Smith, did she not? A. That was my intention, but she talked just as I told you, and I said Smith would maybe give it to her some day, but he never has." He further said: "I recollect of him (Owens) getting the land of the old woman and paying her some on it, and he was to pay no more if there was a suit on it, until after it was ended." It is also shown that Mrs. Starkey and her husband accepted from Smith a life estate in, and resided thereafter on, the land conveyed to appellees, although it seems they resided on the Peterson tract; and in their deed to Owens in 1898 for the Lauck tract they significantly "reserve their lifetime rights of surface and buildings thereon." It is unnecessary to further detail the evidence. It is clear to us, from the evidence as a whole, that the true intent was to convey to the appellees the Lauck 14 acre tract, together with the Eliza Monroe 10 acres, and that through mistake the scrivener

failed to embody such intention in the deed he drew for that purpose. It is well settled that where an instrument is drawn and executed which professes or is intended to carry into execution an agreement previously entered into, but which by mistake of the draftsman either as to fact or to law does not accomplish the purpose intended, or violates it, equity will relieve from such mistake. *Troll* v. *Carter*, 15 W. Va. 567; *Pennybacker* v. *Laidley*, 33 W. Va. 624; *Lough* v. *Michael*, 37 W. Va. 679; *Taylor* v. *Godfrey*, decided at the present term; *Russell* v. *Mixer*, 42 Cal. 475; 1 Story Eq., section 115.

For the reasons stated, the decree of the circuit court is affirmed.

*Affirmed.*