# CHARLESTON.

REGER, *Trustee, v.* MCALLISTER *et al.*

Submitted March 9, 1910.   Decided November 28, 1911.

1. SPECIFIC PERFORMANCE—*Contract—Sufficiency of Description.*
    Equity will not enforce performance of a contract for the sale of land, if the description of the boundaries is so indefinite as not to be capable of being made certain by extrinsic evidence. (p. 54).

2. SAME—*Enforcement—Contract as to Boundary.*
    If the parties to a contract for sale of land agree that certain boundary lines "are to be run as may be hereafter agreed upon," equity will not enforce it, until such open boundary lines shall have been agreed upon by the parties.   (p. 56).

3. BOUNDARIES—*Acquiescence.*
    In the absence of fraud, if a vendee accept a deed, based upon a survey made pursuant to a contract for the purchase of a boundary of land which was to be surveyed out of a larger tract by a certain surveyor mutually agreed on by the parties, and which was surveyed by such surveyor, and rests for nearly five years before making complaint, he will be presumed to have acquiesced in the boundaries located by such survey and described in his deed.   (p. 57).

Appeal from Circuit Court, Pocahontas County.

Bill by Shelton L. Reger against William M. McAllister and others.   Decree for complainant, and defendant McAllister appeals.

*Reversed and Bill Dismissed.*

*Brown, Jackson & Knight,* for appellant.

*Geo. E. Price,* for appellee.

WILLIAMS, PRESIDENT:

Shelton L. Reger, trustee, brought suit in the circuit court of Pocahontas county against William M. McAllister and others to compel specific performance of a contract for the sale of land, and from a final decree rendered in favor of plaintiff, on the 8th of October, 1908, defendant, McAllister, has appealed.

On the 8th of July, 1899, McAllister agreed in writing to sell and convey to Reger, trustee, two adjoining parcels of land at the price of $4.50 per acre, $500 of which was paid at the date of the contract, and the balance to be paid when the deed should be delivered. These parcels of land were to be surveyed out of larger tracts which McAllister owned, and, when surveyed, would constitute one contiguous body, or tract, of land. The agreement stipulated that McAllister should have "the lands surveyed at his own cost and charge, at the earliest practicable date, by B. M. Yeager, Uriah Bird or some other competent surveyor, to be agreed upon by the said parties." He was to give Reger ten days notice of the time when the surveying would be done. A number of dates were agreed upon for making the survey, but in each instance, before the time arrived, either something occurred which made it inconvenient for Mr. Reger to attend, or the surveyor could not then do the work. Mr. Reger admits that the delay was chiefly on his own account. After several attempts to fix a date when it would suit the convenience of Mr. Reger to be present, he finally, on the 11th of October, 1899, wrote from Elkins, West Virginia, to Mr. McAllister at Warm Springs, Virginia, the following letter, viz: "I wired Mr. Bird to arrange with you as to a date to survey your land, I want it closed up, and I hope you and he can arrange dates satisfactory to both. I am now so I can meet you at any time after next week." On the 10th or 11th of October, 1899, Mr. Reger also wired Mr. Bird at Marlinton, West Virginia, to arrange a date with Mr. McAllister, and to go on and do the surveying, whether he (Reger) was there or not. Pursuant to these directions, McAllister and Bird went upon the land, about the 20th of October, 1899, and Bird says he did the surveying according to the contract, as he understood it. Mr. Reger was not present, but he went upon the land a few days afterwards, within a week afterwards, but he says he did not then examine the lines that had

been run. On the 27th of October, 1899, he wrote to McAllister to execute the deed according to their contract to Henry G. Davis, when he should receive Bird's report. McAllister did execute a deed for 523 acres, according to Bird's survey, to Henry G. Davis, which was rejected because it failed to grant certain rights of way over McAllister's other lands, which had been provided for in the contract, and another deed was prepared by a lawyer in Elkins which did include said privileges and easements, and was mailed to McAllister, and was executed by him and returned. This deed was accepted, and the land conveyed by it paid for, and both parties, no doubt, then supposed the matter was a closed transaction. But, in the summer of 1904, Mr. Reger discovered, as he claims, that the survey made by Bird, did not include certain land which was described in the contract of sale, and he thereupon notified McAllister that, on the 15th day of July, 1904, he would go upon the lands with E. E. Taylor, a surveyor of Elkins, West Virginia, and would survey out the land according to the boundaries given in the contract. He did go upon the land with E. E. Taylor, and had him survey out 236¾ acres more of McAllister's land. This suit is brought to compel McAllister to execute a deed for that additional boundary of 236¾ acres.

In addition to his claim of complete performance, McAllister asserts that the boundaries of the tracts of land are not described in the agreement with sufficient definiteness to enable a court to specifically enforce it.

Certainty in description of land agreed to be conveyed, is an essential prerequisite to specific performance. *Mathews* v. *Jarrett*, 20 W. Va. 415. The description of the land which the bill seeks to have conveyed, is given in the contract of sale as follows, viz.: "Also the following described additional tract or parcel of land, the quantity of which cannot now be estimated, adjoining the said first mentioned tract; and adjoining the said Bruce & Chumley 713 acre tract, and adjoining the D. W. Hile and others 2514 acre tract; the lines of said last mentioned tract, are to be run, so as to include all the pine timber off the upper end of said tract, on the North West side of said Crooked Fork, running with the lines of the said Bruce & Chumley tract; and the D. W. Hile and others tract; and so as to exclude all the land that is heavily timbered with locust, cherry, and other hardwood, that is

to say, there is to be included in this tract, all of the land, adjoining the Hile lands, upon which the pine timber predominates. The lines on the S. E. side of this tract, are to be run as may be hereafter agreed upon, between the said Wm. M. McAllister, and the said Shelton L. Reger, making as many corners as may be found necessary to carry out the terms of this agreement."

Counsel for appellee invokes the equity maxim, *id certum est quod certum reddi potest*, and insists that the land can be identified by the above description. There is no doubt that a boundary of land could be surveyed which would coincide with that description. But it is equally certain that it might be laid off by an indefinite number of different boundary lines, and each separate manner of laying it off would fit, in a general way, the description of the boundary named in the contract. That is what makes the contract indefinite as to boundary lines. The only facts stated in the agreement to fix definite boundary lines, on one side of the tract, are, (1) that the land is on the North East side of Crooked Fork, (2) that the pine timber must predonminate on it, and (3) that the land on which the hardwoods predominate is to be excluded. That the first fact is too uncertain, is too patent to merit discussion. Crooked Fork is not the boundary line, and the contract does not say how far the boundary lines are to be located from the stream. The second and third facts are so indefinite as description of boundary lines, that no two surveyors, each working independently of the other, would lay the lines in the same place. This is verified by the fact that Bird, the surveyor mutually agreed on by the parties to lay off the lines, ran them in one place, and Taylor, the surveyor later employed by Reger, ran them in quite a different place. The bill does not charge McAllister with fraud of any kind, and it appears from the evidence that Bird ran the lines by the agreement, as he interpreted it, and that he was not instructed by McAllister, otherwise than to follow the contract.

The element of uncertainty as to where the lines should be located, is further complicated by the fact that the pine timber is not found on the land in a continuous body, but grows in patches, the pine predominating in some places, and the hardwoods in other places. The two varieties of timber shade off gradually into each other, and in some places it is difficult to tell which

kind predominates, the two being so intermingled. Notwithstanding the contract provides that the land on which the hardwoods predominate is to be excluded, it is proven by plaintiff's own witnesses that Taylor's survey of the additional land, claimed by the bill, includes from fifty to seventy-five acres on which the hardwood predominates. It is very questionable, whether or not the pine predominates on the 236¾ acres in question, taken as a whole. But assuming that it does, still that alone is not sufficient to determine the case for plaintiff. Because the tract might have been laid off in a different shape, bounded by different lines, and containing a greater, or a less, quantity, and still have been a tract on which the pine would predominate. Could the court adopt any one of such tracts as the one which the parties to the agreement intended? We think not, because, to do so would be in effect to make an agreement for them. But why should we extend this discussion, when the contract expressly states that the boundary lines on one side of the tract are to be the subject of future agreement. It reads: "The lines on the S. E. side of this tract are to be run as may be hereafter agreed upon," etc. But Mr. Reger failed to meet Mr. McAllister on the land at the time he himself appointed, and they never actually agreed where the southeast boundary lines should be run. This case clearly falls within the principle declared and applied in the following cases, and is governed by them, viz.: *Mathews* v. *Jarrell,* 20 W. Va. 415; *Westfalls* v. *Cottrills,* 24 W. Va. 763; and *Blankenship* v. *Spencer,* 31 W. Va. 510. Each one of those cases was a suit for specific enforcement of a contract for the sale of land, and the description of the land in the contract of sale was no more uncertain in any one of those cases than it is in the case now under review, yet in each of them the court denied relief to the vendee on the ground of uncertainty of description. There is more danger of doing injustice, in cases involving uncertainty of description, by attempting to give relief, than there is in refusing it. Because, if the vendee has paid nothing, and is denied relief, he has lost nothing but his bargain; and if he has paid in advance for the land, and fails to get it, he can recover his money in an action of *assumpsit.* On the other hand, if the court should undertake to enforce such contract, it is liable to compel the parties to perform that which they never agreed to.

There is another reason, appearing from the facts in the case, why equity should deny relief, and that is the presumption of Reger's acquiescence in Bird's surveying, arising from his protracted delay in bringing his suit. After accepting the deed, and apparently acquiescing, for nearly five years, in the survey made by the surveyor who had been mutually agreed upon, and who was directed by Reger to survey the land, whether he was present, or not, plaintiff seeks to compel defendant to convey to him an additional tract of land which plaintiff had surveyed by a different surveyor, and according to his present idea of where the boundary lines should be located. Even if the boundary lines had been described with sufficient certainty by the contract to enable a court of equity to enforce specific performance, it would seem inequitable to grant relief because of plaintiff's laches. Moreover, between the acceptance of the deed and the bringing of the suit, the land has greatly enhanced in value. If the land had depreciated, instead of appreciated in that time, it is more than probable that plaintiff would have been content. Must he not be content as it is? We think so. He has delayed so long in bringing his suit, that he must be regarded as having acquiesced in what was done. To grant his prayer would be to give him a great advantage over the other contracting party, in view of the enhanced value of the land. Equity will not permit him to occupy a position in relation to his vendor, in the absence of fraud, where he may say, in case the land depreciates, I am satisfied, and in case it enhances, I must have more.

Reger bought the land as agent for an undisclosed principal, and the rights of his principal can rise no higher than his own, so far as they affect the vendor. The principal, now most vitally interested, did not become known to McAllister until after this suit was brought.

The decree will be reversed, and a decree entered here dismissing plaintiff's bill.

*Reversed and Bill Dismissed.*