MEADOW RIVER LUMBER COMPANY *v.* MYRTLE SMITH, *et al.*

(No. 8741)

Submitted January 17, 1939. Decided January 31, 1939.

*Herbert M. Blair* and *James H. Brewster, Jr.*, for appellant.

*G. Gilmer Easley,* for appellee Meadow River Lumber Co.

MAXWELL, JUDGE:

This appeal presents the question of the sufficiency of a bill of review, held inadequate and not permitted to be filed by the circuit court. Appeal was granted the proponent of the rejected pleading.

The primary parties in the original cause are Meadow River Lumber Company, plaintiff, and Myrtle Smith and Sun Lumber Company, defendants. Other parties came in by petition. A decree on the merits was entered May 19, 1937, granting to the plaintiff certain of the relief prayed in the bill. The Sun Lumber Company filed neither demurrer nor answer but permitted the final decree to be entered against it by default.

In December, 1937, the Sun Lumber Company, upon proper notice, tendered in open court a bill of review and moved that it be filed. Objection to the filing of the bill of review was sustained by the chancellor and that pleading was rejected January 12, 1938, for the reason, as recited in the decree of rejection, that the bill of review fails to show any error of record in the cause or that any new evidence has become available. The bill of review is based solely on allegations of error appearing on the face of the proceeding; consequently, the reference in the decree to new evidence is not pertinent.

Under present statutory provisions the proper method of testing the sufficiency of a pleading is by demurrer. Code, 56-4-36. However, since the chancellor's decree re-

jecting the bill of review discloses that the pleading was appraised as though under challenge by demurrer, we shall treat the matter here as though the statutory testing method had been applied in proper form.

From allegations of the original bill it appears that in 1897 C. L. McClung was the owner in fee simple of a tract of about 7,000 acres of land in the county of Greenbrier; that by a writing executed by him November 2, 1897, he purported to convey certain portions of the land to his eight children, severally, and that one of the children is Myrtle McClung Smith, defendant in this cause, to whom there was therein attempted to be conveyed, without reservation or exception, save only a life estate in the grantor, a tract of 100 acres; that by deed of November 10, 1909, C. L. McClung conveyed 5,000 acres of timber to J. O. and L. E. McClung; that through mesne conveyances this timber came into the ownership of Sun Lumber Company in 1911, and that in 1923, the Sun Lumber Company conveyed the timber to Meadow River Lumber Company, with covenants of general warranty; that C. L. McClung died in 1923; that the 100 acres of land claimed by Myrtle Smith is inside the boundaries of the 5,000 acres of timber; that in the course of the manufacture of the timber into lumber the Meadow River Lumber Company, within the period from 1926 to 1929, cut and removed the timber from the 100-acre tract claimed by Myrtle Smith; that thereafter, Myrtle Smith asserted a claim against the plaintiff for damages on account of the removal of this timber; that for the purpose of enforcing her claim, she has instituted in succession three actions of law against the plaintiff, the first two of which actions she dismissed, but that the third was pending at the time of the institution of this chancery cause. The bill contains the further allegation that the aforementioned purported deed of November 2, 1897, "is void for vagueness of the description of the property to be conveyed to the said defendant, Myrtle Smith."

The bill prayed that Myrtle Smith be enjoined from further prosecution of the pending action at law; that the

aforementioned purported deed of November 2, 1897, be cancelled, annulled and held for naught; that the plaintiff be decreed to be the fee simple owner of the timber and timber rights on the land claimed by Myrtle Smith; and that if it should be determined by the court that she has superior title to the 100 acres of timber, the amount of loss sustained by the plaintiff by reason thereof be ascertained, and for such amount there be a decretal judgment in favor of the plaintiff against the Sun Lumber Company; and for general relief.

Myrtle Smith answered the bill and set forth her claim of title to the 100 acres of land under the above-mentioned instrument executed by her father November 2, 1897, and her claim for damages against Meadow River Lumber Company because of its removal of the timber from that tract. Her children, as remaindermen under the stated instrument (hereinafter to be explained), joined by petition in the claim with their mother. There was no testimony taken in the case except the depositions of two witnesses who testified on behalf of Meadow River Lumber Company respecting the value of the timber which was removed by it from the 100-acre tract claimed by Mrs. Smith and the remaindermen. These witnesses both fixed the value of the timber removed at forty-five dollars per acre. Counsel for Sun Lumber Company attended the taking of these depositions and cross-examined the witnesses. This was the only appearance made by Sun Lumber Company at any stage in the proceedings.

In final decree, May 19, 1937, the court adjudged "that Myrtle Smith and the contingent remaindermen designated in the deed executed by C. L. McClung, dated November 2, 1897, referred to in said pleadings and exhibits, are the owners of the timber on the 100 acres of land referred to and described in said pleadings and exhibits, and particularly described in the map filed as an exhibit with the answer of defendant, Myrtle Smith, filed herein, and that the same was and is the property of the said Myrtle Smith and remaindermen." The court further adjudged that the Meadow River Lumber Company "acquired no

title to the timber on said 100 acre tract of land under its deed from the defendant, Sun Lumber Company, dated March 1, 1923, described in said pleadings, and that it improperly cut and removed the timber from said land, and is, therefore, liable to the said Myrtle Smith and the remaindermen designated in said deed for damages in the sum of the fair and reasonable value of said timber." And, ascertaining the value of the timber removed from the 100-acre tract to be $4500.00, the court entered decretal judgment against Meadow River Lumber Company in favor of Myrtle Smith and the trustee for the remaindermen for the sum stated. Further, the court decreed that the Sun Lumber Company never had title to the timber on the 100-acre tract of land and, therefore, could not convey the same to Meadow River Lumber Company under the deed of March 1, 1923, and "accordingly, the covenant of said deed is thereby breached and that the plaintiff, Meadow River Lumber Company, is entitled to recover from the said defendant, Sun Lumber Company, a corporation, the damages sustained by it by reason of said breach * * * ." Then follows a decretal judgment in favor of Meadow River Lumber Company against Sun Lumber Company for the sum of $4500.00, with interest and costs.

It is because of the decretal judgment against it that the Sun Lumber Company now attacks the whole proceeding by bill of review.

A party to a cause who has defaulted in making appearance thereto may proceed by a motion to reverse the adverse judgment or decree. Code, 58-2-4. But that procedure is not exclusive; it is merely cumulative and does not destroy the right of a party in default in a chancery cause to employ a bill of review based on error in the record. *Gallatin Land, Coal & Oil Company* v. *Davis*, 44 W. Va. 109, 28 S. E. 747; *Kanawha Oil & Gas Company* v. *Wenner*, 71 W. Va. 477, 479, 76 S. E. 893, 43 L. R. A. (N. S.) 559; 1 Hogg's Eq. Pr., sec. 210. Where, however, a bill of review is grounded on after-discovered evidence, it cannot be maintained by a party who permitted the

decree complained of to be entered against him by default. *Weldon* v. *Callison,* 119 W. Va. 306, 193 S. E. 441; *Camden* v. *Ferrell,* 50 W. Va. 119, 40 S. E. 368. In the opinion in the last mentioned case, at page 120, and in the case of *Barbour et al.* v. *Tompkins,* 58 W. Va. 572, at page 582, 52 S. E. 707, 3 L. R. A. (N. S.) 715, there are statements which seem to throw doubt on the right of a party who has permitted a decree to be rendered against him *pro confesso* to file a bill of review for error appearing on the face of the record. We disapprove those statements to the extent that they may be susceptible to the construction indicated. In our late case of *Weldon* v. *Callison, supra,* syllabus point three reads: "A bill of review will not lie to a decree *pro confesso* or to correct a decree obtained by fraud or mistake." The first part of that point is too broad. It should read: "A bill of review based on newly discovered evidence will not lie to a decree *pro confesso,* or to correct a decree obtained by fraud or mistake." For this reason we modify that point (Syl., pt. 3, *Weldon* v. *Callison*) as thus stated.

The bill of review herein sets forth many alleged grounds of prejudicial error appearing on the face of the proceedings, and thereon bases the prayer for review and reversal of the decree of May 19, 1937.

Of the many alleged errors, we shall discuss only one because, in our opinion, it is paramount, and, *prima facie,* is controlling of the whole matter. This point is the assertion by Sun Lumber Company that the above mentioned paper of November 2, 1897, whereunder Myrtle Smith and her children as remaindermen claim title to 100 acres of land, "is void for uncertainty as to its identification and description of the 100 acre tract of land for the cutting and removal of the timber from which said recoveries were decreed * * * ."

We denominate the paper of November 2, 1897, a deed because the character of this identical paper has been so determined by this court in another case. *Laing* v. *McClung,* 103 W. Va. 341, 137 S. E. 744. In that case there was involved the claim of title of Piney McClung, sister

of Myrtle McClung Smith, to 50 acres of land, part of the same large tract whereof Myrtle claims 100 acres. Piney's claim, like Myrtle's, was based on the paper executed to them by their father, C. L. McClung, November 2, 1897. This court, affirming the trial court, held and adjudicated that that paper is, in fact, a deed, and that the description therein of the 50-acre tract conveyed to Piney is sufficient. We apply here the adjudication that the paper constitutes a deed. But the finding in that case that the description of Piney's 50-acre tract is sufficient to identify it has no bearing on the instant case respecting the sufficiency of the description of the 100-acre parcel claimed by Myrtle, because the description of Piney's 50-acre tract and the purported description of the tract claimed by Myrtle are entirely different matters, and must be appraised solely on their respective merits.

By the much mentioned instrument of November 2, 1897, C. L. McClung set forth that for valuable consideration, he had that day sold (the words "grant" or "convey" are not used) one certain (separate) tract of land to each of the parties of the second part named in the caption of the instrument. The parties named are his eight children. In the body of the deed the eight children, grantees, are mentioned separately, and in connection with each one's name there is a description or purported description of the parcel of land which that child was to receive. Myrtle's name appears seventh in the list. The attempted description of her parcel is as follows: "and Mirtle A. McClung is to *is* to have 100 *acreev lade of* out of the south *easteren* end of the 578 acre *survay pattented* to David Hannah and Ald. F. McClung." The habendum of the deed follows: "to have and to hold *thare* life times for *theire seput euse* and behoof and at the time of the death of each one of these above named of the second part of this Deed than those lands is to belong to *thars* nearest *B*lood relation and the party of the first part retains his life time *rite* in these lands and the parties of the *fust* do *covnant* with the parties of the second part that he will *warantee* special the title to said property,

signed and sealed this the 2 day of November 1897." The description of the Myrtle McClung Smith tract is general only. It carries no identification of the 100-acre parcel other than that it is to come out of the southeastern portion of the Hannah and McClung survey of 578 acres. There is no inkling in the attempted description of how there should be laid down the line or lines to cut off the 100 acres from the body of the 578-acre survey mentioned. Such matters may not be determined by conjecture. It might be possible, by a process of elimination, considering definite boundaries, if such there be, of other parcels carved out of the larger tract, that the boundary line between the parcel claimed by Myrtle and the northern or larger portion of the 578-acre survey could be determined with sufficient certainty, but no such showing is attempted in this record. As the matter now stands, no information is disclosed by which the northern line or lines of the tract claimed by Myrtle can be determined.

The question of the sufficiency of the description of land has frequently arisen in suits for specific performance of contracts for the sale of land. For such cases this court has declared the rule: "Equity will not enforce performance of a contract for the sale of land, if the description of the boundaries is so indefinite as not to be capable of being made certain by extrinsic evidence." *Reger* v. *McAllister,* 70 W. Va. 52, 73 S. E. 48. Other West Virginia cases concur. Of course, it is not necessary that a deed or other instrument affecting land set forth a description which is adequate in detail. In such circumstances there is to be applied the maxim, "That is certain which is capable of being made certain." So, though an instrument does not carry details of description, it is sufficient if it furnishes data from which the details may be obtained. But where an instrument is lacking both in details of description and in data for reference, the instrument is void. The rule applies to deeds as well as to contracts of sale, and other instruments. *Webb* v. *Ritter,* 60 W. Va. 193, syllabus 23, 54 S. E. 484.

In the decree on the merits, May 19, 1937, it appears

that the adjudication was based in part on a plat which had been filed in the cause as an exhibit with the answer of Myrtle Smith. This plat was prepared by two surveyors and purports to show the 100-acre parcel of Myrtle Smith cut off the southeastern section of the 578-acre survey hereinabove mentioned. The plat and report accompanying the same seem to have been made in connection with one of the law actions of Myrtle Smith against Meadow River Lumber Company. From the plat and report it appears that the 100-acre parcel was laid off from the southeastern end of the larger survey by beginning at a chestnut snag, one of the corners of the large survey and running thence north 75 degrees 9 minutes east 2,344.6 feet to a stake in an eastern sideline of the large survey. No doubt the surveyors are correct that by this means they identified a 100-acre parcel of land in the southern end of the Hannah and McClung tract, but there was no authority for their starting the cut-off line at the corner indicated by the chestnut snag. Their action in so doing was purely arbitrary. So far as is disclosed by the purported description of the Myrtle McClung (Smith) parcel in the deed of November 2, 1897, there was no more authority in the surveyors for starting the division line at the chestnut snag than at any one of a hundred other points which might be arbitrarily determined. Accordingly, the plat and report carry no evidentiary weight.

The record as it stands presents no sufficient basis for adjudication of right and title of Myrtle Smith in the 100-acre tract of land claimed by her, because the attempted description thereof in the deed executed by C. L. McClung November 2, 1897, is wholly insufficient, and that insufficiency has not been overcome by extrinsic evidence, the plat and report of the surveyors being of no avail in that particular. As stated above, this item of challenge appears in the bill of review, and thereby there is made an incisive attack on the decree of May 19, 1937, and the proceedings on which it is grounded. This outstanding and dominating element of the bill of review

being well pleaded, the bill of review, or at least that feature thereof, is good on demurrer. Since, however, as already noted, there was no demurrer but merely a motion to reject the bill of review, that motion should have been overruled and the bill of review filed.

There appears from the record herein a matter not set forth in the bill of review nor mentioned by counsel in oral or written argument, but the item is of such importance that we think there must be mention made thereof in this opinion, not as a basis for reversal, but in order that attention may be thus pointedly directed to the situation. The circumstance is this: The special judge who heard this cause and entered the decree of May 19, 1937 and the later decree rejecting the bill of review, was not elected as such special judge by the Greenbrier County bar in the manner provided by statute, but his selection purports to have been made by the parties to the suit by agreement, acting through their counsel. That is a method also approved by statute. Such selection may be made by the parties or their attorneys "by a writing signed by them." Code, 51-2-10. The disturbing fact here is that the agreement of February 1, 1937 for the selection of a special judge was signed only by counsel for Meadow River Lumber Company and Myrtle Smith, respectively, and does not purport to be signed by the Sun Lumber Company or its counsel.

Because of the failure of the circuit court to permit the bill of review to be filed and to hold it sufficient as on demurrer, we reverse the decree of January 12, 1938, rejecting the bill of review, and remand the cause for further proceedings not at variance herewith.

*Reversed and remanded.*