MEADOW RIVER LUMBER COMPANY *v.* MYRTLE SMITH *et al.*

(No. 9554)

Submitted April 18, 1944. Decided May 30, 1944.

Fox, JUDGE, absent.

Herbert M. Blair, for appellant.
S. H. Sharp and J. H. White, for appellees.

LOVINS, JUDGE:

Sun Lumber Company complains of an adverse decree rendered by the Circuit Court of Greenbrier County.

This controversy involves the title to timber on a 100-acre tract of land, which is within the exterior boundary lines of another 5,000-acre tract. A decree of the Circuit Court of Greenbrier County which, in effect, sustained a demurrer to a bill of review and denied leave to file the same, was reversed and the cause remanded. *Lumber Co. v. Smith,* 121 W. Va. 14, 1 S. E. 2d 169. The record on the former appeal is here considered, but a restatement of the facts there shown is unnecessary, they having been stated in the opinion on the first appeal.

Myrtle Smith asserts that she is the owner of a life estate in a tract of land of 100 acres, and her six children claim the fee therein as contingent remaindermen. The basis of their claim is a deed from C. L. McClung to his eight children, including Myrtle Smith (nee McClung), bearing date November 2, 1897, and admitted to record on the 16th day of November of the same year. This deed, ineptly drawn, names eight children of C. L. McClung as grantees and in the body of the instrument the names of the grantees are repeated, followed by language purporting to describe the land granted each. Specific words of grant do not appear in the deed, it being provided that the grantor

"* * * has this day sold unto the parties of the second part one *serten* tract of land to each one of the above named parties to wit the lands herein *and* after *mention* is to be laid off by three good disinterested men chosen by a majority of those above named parties this is to be done inside of one or *too* years from the time of the *dath* of C. L. McClung and *partey* of the first part of this Deed this lands *is* to be laid *of* so as to join each one's tract of land *Deede* to said parties heretofore by C. L. McClung the land is herein described and bounded by the party of the first part or near as it can be done,* * *".

The purported description of the land claimed by Myrtle Smith and the remaindermen is as follows:

"*Mirtle* A. McClung is to *is to* have 100 *acue lade of* out of the south *easteren* end of the 578 acre *survay pattented* to David Hannah and *Ald* F. McClung,* * *".

The tract of land was neither inclosed nor occupied by Myrtle Smith, C. L. McClung having retained a life estate therein, and it was not laid off as provided in the deed.

In 1909, C. L. McClung conveyed to J. O. and L. E McClung all timber, except that reserved for mine purposes by a former deed, then standing on a tract of approximately five thousand acres, the boundary lines of which include the 100-acre tract claimed by Myrtle Smith and the remaindermen. The timber so conveyed passed by mesne conveyances, to Meadow River Lumber Company, Sun Lumber Company being its immediate grantor. C. L. McClung departed this life on February 13, 1923, and the Meadow River Lumber Company acquired its title to the land about March first of the same year. The timber on the 100-acre tract of land was removed by Meadow River Lumber Company between the years 1926 and 1929, and the evidence shows that no claim adverse to the lumber company was made prior to its removal.

Three actions were instituted for the purpose of recovering damages for the removal of the timber. Two ended before this suit was instituted, and the third and last action was dismissed after the institution of the instant suit on the ground that the issues therein had been determined in a chancery suit.

This suit was instituted by Meadow River Lumber Company against Myrtle Smith, Sun Lumber Company and others to enjoin the prosecution of the last action, to cancel the deed from C. L. McClung to Myrtle Smith and, in the alternative, that if Myrtle Smith and the remaindermen be adjudged the owners of the timber cut and removed from the 100-acre tract, that a decretal judgment be entered against Sun Lumber Company for the amount recovered by Myrtle Smith and the remaindermen.

The bill of review being filed in accordance with the mandate of this Court, answers were filed by all defendants, including a formal answer by the guardian *ad litem* of the infant remaindermen. Demurrers to two of the answers having been overruled, Sun Lumber Company replied specially to the joint and separate answer of Myrtle Smith and her co-defendants. Depositions were taken for the purpose of locating and identifying the 100-acre tract of land, which included the testimony of three surveyors, one of whom had not surveyed the land but had prepared a map from data and field notes of surveys made by other persons, and who testified that he believed the map to be accurate, and that, in his opinion, the said tract was identified in accordance with practicable methods of surveying. Another witness, B. M. Higginbotham, being one of the two surveyors who made the survey and report considered by this Court and mentioned in its former opinion, testified that he had surveyed the 100-acre tract and the adjoining 185-acre tract, to be presently discussed, and had made other surveys in the vicinity of the land in controversy; that the survey and report correctly showed the location of the boundary lines and thus identified the land; that said survey was made according to the directions in the deed; that it had been

made in accord with approved and practicable methods of surveying; and that the tract was laid off in compact form. L. G. Swing, the other surveyor who made the survey and report hereinabove mentioned, testified that he had surveyed some but not all of the lines of the 100-acre tract; that he believed that the work done by him and Higginbotham was in accordance with the practicable requirements of surveying; and that the tract was correctly located. All admitted that the north line of the 100-acre tract could be placed at various locations and with termini different from those fixed by them in their survey and report, and that the tract so laid out by north lines at different locations would contain one hundred acres in the southeast end of the Hanna and McClung patent. Another surveyor, Linger, called by Sun Lumber Company, testified with respect to the location of the northern line to the same effect. Higginbotham stated that no surveyor would locate the north line differently from the way he had, even though it was possible to do so. The 100-acre tract as located by all three of the surveyors first mentioned is an irregularly shaped tract, the boundary lines of which are indicated on the map appearing on page 852.

The location of the line from "C" to the stake just northwest of the letter "H" on the map is the only line which is not definitely located, the other six lines of the 100-acre tract being a part of the lines of the Hanna and McClung patent. Myrtle Smith and her co-defendants also rely on the provisions of the deed under which they claim requiring the 100-acre tract "to join" another tract of 185 acres previously conveyed by C. L. McClung to Otey G. McClung, Trustee. The 185-acre tract is purportedly shown on the map hereinabove mentioned. Higginbotham testified that he located the boundary lines of the 185-acre tract by a survey according to the description in the deed from C. L. McClung to Otey G. McClung, Trustee, which description is as follows:

"one *sertin* tract of land lying in Greenbrier *Courst* and adjoining the land of C. L. McClung

and others bounded and described as follows, to-wit: Beginning at Lemmon*s* McClung lower *connor* on Mill Creek it being near Stuart down *frum* the *uper* south *easterin* corner of the Allen McClung *survay* of 250 acres then this *survay* is to be *Rn form* Mill Creek up the *op* of *Clemmins* Ridge *wherei* said Ridge *joups* and up said Ridge to M. R. McClung line and with the same to the top of Big Mountain and up said Mountain to the top of *Shummake* Knob at the *patten* line *athe* Skudder *survay* and with said *patten* line to Lemmon McClung lin*ee* and with Lemmon*s* McClung line to the beginning *suposed* to contain *form* one to *too* hundred *acues* of *Pine Kick* land *ling* on the head of Mill Creek * * *."

In making the location of the 185-acre tract, the surveyor relied on another deed from C. L. McClung to Lemmon A. McClung, in which the description is devoid of any courses or distances, and mentions only three natural monuments, two creeks and a certain elevation named Sumac Knob. Presumably, Sumac Knob is the elevation mentioned in the description above as "Shummake Knob", which is located on line 13-14 opposite point "16" on the map. There is evidence tending to show that the 185-acre tract did not extend to point "C", and that the northwest corner of the tract was located at or near Sumac Knob. This testimony is based on the survey made by a deceased engineer, whose survey of the 185-acre tract did not show the elongated part of the tract extending from point "16" northwesterly to point "15"; thence easterly to point "14"; and thence southeasterly to a point opposite point "16". This controversy depends almost entirely on the location of the line from the chestnut snag, point "C" on the map, N. 75-09 E. 2344.6 feet to a stake.

The trial chancellor entered a decree on June 29, 1943, holding that extrinsic evidence in aid of the description in the deed from McClung to his daughter was admissible, and that the evidence introduced in aid thereof sufficed to locate and identify the land; approved a former decree entered in this cause on May 19, 1937, which last-

mentioned decree adjudged that the Meadow River Lumber Company acquired no title to the timber on the 100-acre tract of land, and that the timber had been illegally cut and removed therefrom by the lumber company; that the Meadow River Lumber Company was liable to Myrtle Smith and the remaindermen in the sum of $4,500.00, and that, in turn, Sun Lumber Company was liable to Meadow River Lumber Company for like amount, with interest and costs, by reason of the breach of the covenant of general warranty in the deed from Sun Lumber Company to Meadow River Lumber Company.

This appeal presents the following questions:

(1) Is the deed from C. L. McClung to his daughter, bearing date November 2, 1897, operative as a conveyance of the 100-acre tract?

(2) If not, by reason of the indefinite and uncertain description therein, does the description point to extrinsic facts so that evidence of such facts may be adduced to render the description certain?

(3) Is the evidence adduced sufficient to render the description certain and support the finding of the trial chancellor?

In our determination of the questions here presented, we bear in mind the rule that a deed of conveyance should not be declared void for uncertainty of description of the land, if by reasonable rules of construction, aided by evidence of extrinsic facts, the description can be made certain. *Jones* v. *Gibson,* 118 W. Va. 66, 188 S. E. 773; *Bolton* v. *Harman,* 98 W. Va. 518, 128 S. E. 101. We are mindful also of the rule that where there is an ambiguity in a deed, the entire deed is to be considered and a construction favorable to the grantee adopted. *Weekley* v. *Weekley,* 126 W. Va. 90, 27 S. E. 2d 591; *Kirk* v. *Insurance Co.,* 126 W. Va. 213, 27 S. E. 2d 596.

It has been consistently held in this State that extrinsic evidence may be admitted to make certain the descriptive matter in a deed of conveyance or a contract for the sale of land, if such writing pointed to facts and circumstances which, if established, would render the

description certain. The identity of the land does not depend solely on the descriptive words used in the deed of conveyance, if the description furnishes means of identifying the land intended to be conveyed. *Warren* v. *Syme*, 7 W. Va. 474, 487; *Thorn* v. *Phares*, 35 W. Va. 771, 14 S. E. 399; *Simpkins* v. *White*, 43 W. Va. 125, 128, 27 S. E. 361; *Foley* v. *Ruley*, 43 W. Va. 513, 520, 27 S. E. 268; *Smith* v. *Owens*, 63 W. Va. 60, 66, 59 S. E. 762. But if the description is so indefinite as to afford no means of identifying the land intended to be conveyed, the deed is void. *Hoard* v. *Railroad Co.*, 59 W. Va. 91, 53 S. E. 278; *Webb* v. *Ritter*, 60 W. Va. 193, 229, 54 S. E. 484; *Meadow River Lumber Co.* v. *Smith, supra; Reger* v. *McAllister*, 70 W. Va. 52, 73 S. E. 48; Jones—"The Law of Real Property in Conveyancing", Vol. 1, Section 323. "The paper itself must contain enough to enable the court, with the aid of extrinsic evidence, to say the words of the instrument select and fix a certain thing and no other, as the subject matter of the contract." *Smith* v. *Peterson*, 71 W. Va. 364, 369, 76 S. E. 804. No muniment of title appears in this record which would serve to identify the northern line as located by surveyors Higginbotham and Swing, but if the chestnut snag at point "C" on the map can be established as one of the termini of this line, the location of the other would follow as a matter of course. The location of the 185-acre tract, according to the theory of Swing and Higginbotham fixes the chestnut snag at "C" as one of the termini. The location and description of the 185-acre tract will be hereinafter discussed.

There is another method by which the northern line may have been established: By elimination of all of the acreage in the Hanna and McClung patent, except the one hundred acres in the southeast end, and thereby locating the north line of the 100-acre tract; *Lumber Co.* v. *Smith, supra;* but no effort was made to locate the line by this method.

The points adjudicated on the former appeal are now the law of the case, notwithstanding the filing of supplemental pleadings. *Atlantic Bitulithic Co.* v. *Edgewood,*

114 W. Va. 243, 171 S. E. 754. Furthermore, the evidence adduced subsequent to remand does not affect or give any reason for altering the former holding. It was held on the first appeal that the indefinite description of the land contained in the deed from McClung to his daughter prevented the operation of the deed as a conveyance, but that evidence of extrinsic facts was admissible to aid the description and render the same certain. It is also to be borne in mind that on the former appeal the plat and survey of the two surveyors, Higginbotham and Swing, were characterized as being devoid of evidentiary value, and there is nothing in the oral testimony now before us changing its status.

In accordance with the law of the case established by the former opinion, we reach the conclusion that the description in the deed here considered is so uncertain and indefinite that the deed did not operate to pass title to the 100-acre tract of land, but that the deed points to extrinsic facts as a means of identifying the land.

We now discuss the question of whether the evidence of extrinsic facts now offered is sufficient to render the description of the 100-acre tract certain and definite. No inflexible rule can be laid down as to the limits of extrinsic evidence in aid of the description in a deed of conveyance. The evidence will not be permitted to contradict the deed. *Hoard* v. *Railroad Co., supra.* Such evidence will not be admitted to supply any defect or omission in the terms of the deed. *Crawford* v. *Workman,* 64 W. Va. 10, 61 S. E. 319. It is confined to the function of explanation and of showing the circumstances surrounding the conveyance to the same extent only as other ambiguous written instruments may be explained. See *Crawford* v. *Workman, supra; Bank* v. *Catzen,* 63 W. Va. 535, 60 S. E. 499. The opinion of the surveyors as to the location of the northern boundary line is inadmissible. *Mylius* v. *Lumber Co.,* 69 W. Va. 346, 71 S. E. 404.

Myrtle Smith and her co-defendants contend that two extraneous facts are indicated in the deed which would render the description certain: (a) The requirement that

the 100-acre tract be located in the southeast end of the Hanna and McClung patent; and (b) that it join the 185-acre tract. We agree with this contention. It is clear that the 100 acres should be located in the southeast end of the above-mentioned patent, and it is also clear that it should adjoin the 185-acre tract. But when we examine the deed conveying the 185-acre tract we find the description therein to be almost, if not equally, as indefinite as the purported description of the land in controversy. Furthermore, the deed from C. L. McClung to Lemmon A. McClung discloses like defect. Doubt and uncertainty are present in the descriptions of both tracts. Although it may be that by continued reference to descriptions of adjoining tracts they could be made certain and a deed having the requisite certainty or indicia thereof could be found, but no such deed appears in this record. An analysis of the testimony of the surveyor with reference to the location of the 185-acre tract shows that he located and surveyed said tract by means of facts within his own knowledge rather than by directions contained in any muniment of title. He also seems to have possessed knowledge of the methods used by C. L. McClung in conveying his lands. The knowledge he possessed of such methods is not sufficient authority to determine or identify the lines of the two tracts.

. As hereinabove stated the location of the northern line of the 100-acre tract is controlling. We have found no evidence from which the northern line can be located with certainty. It is still left to doubt and conjecture as to the termini of that line. We look to the deed and the evidence in support of its description and find no means of ascertaining its location. We see nothing in the evidence to change the former holding of this Court to the effect that the action of the surveyors in locating the northern line was arbitrary and without authority, and the evidence offered in support thereof is not sufficient to establish its location.

It is unnecessary to discuss the questions relative to estoppel allegedly arising by reason of laches and because

of Myrtle Smith's participation in the distribution of her father's estate. The liability of Sun Lumber Company to Meadow River Lumber Company resting on the claimed liability of the latter to Myrtle Smith and her co-defendants is foreclosed by the holding that the Meadow River Lumber Company is not liable to claimants.

In accordance with the foregoing, the decrees of the Circuit Court of Greenbrier County entered on May 19, 1937, and June 29, 1943, are reversed, and a decree will be entered here adjudging and decreeing that Meadow River Lumber Company was the owner of the timber and timber rights in the 100-acre tract of land, and that further prosecution of any law action to collect damages for cutting and removing the same be perpetually enjoined; and that all relief prayed for by Myrtle Smith and her co-defendants herein be denied.

*Reversed; decree entered here.*